1   TIFFANY CHEUNG (CA SBN 211497)
    TCheung@mofo.com
2   LUCIA X. ROIBAL (CA SBN 306721)
    LRoibal@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone: 415.268.7000
5   Facsimile: 415.268.7522

6   ADAM J. HUNT, *pro hac vice*
    AdamHunt@mofo.com
7   Morrison & Foerster LLP
    250 West 55th Street
8   New York, New York 10019-9601
    (212) 336-4341
9   (212) 468-7900 (fax)

10  Attorneys for Defendant
    UBER TECHNOLOGIES, INC.

11

12                UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

15  LUCIUS MANNING, individually and on          Case No. 3:18-cv-02931-HSG
    behalf of all others similarly situated
16
                                                 **NOTICE OF MOTION AND MOTION
17              Plaintiff,                        BY DEFENDANT TO COMPEL
                                                 ARBITRATION AND FOR STAY;
                v.                               MEMORANDUM OF POINTS AND
18                                               AUTHORITIES IN SUPPORT**
    UBER TECHNOLOGIES, INC., a Delaware
19  corporation,
                                                 Judge:        Hon. Haywood S. Gilliam, Jr.
20              Defendant.                        Action Filed: May 18, 2018
                                                 Hearing Date: September 27, 2018
21                                               Time:         2:00 p.m.
                                                 Courtroom:    2
22

23

24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

3

    **PLEASE TAKE NOTICE THAT** on September 27, 2018 at 2:00 p.m., or as soon

4

thereafter as the matter may be heard in the U.S. District Court, Northern District of California,

5

Oakland Division, located at 1301 Clay Street, Oakland, California, in Courtroom 2 before the

6

Honorable Haywood S. Gilliam, Jr., Defendant Uber Technologies, Inc. ("Uber") will, and hereby

7

does, move the Court for an order to compel individual arbitration of Plaintiff Lucius Manning's

8

claims and stay this action pending the completion of individual arbitration proceedings.[1]  This

9

Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, and upon the

10

grounds that Plaintiff agreed to arbitrate his claims when he consented to the Arbitration

11

Agreement in Uber's Terms and Conditions.

12

    This motion is based on this Notice of Motion and Motion, Memorandum of Points and

13

Authorities, the Declarations of Dylan Tonti and Naveen Narayanan, and all exhibits thereto, all

14

documents in the Court's file, and on such other written and oral argument as may be presented to

15

the Court.

16

17

18

19

20

21

22
23
24
25
26
27
28

---

    [1] This motion satisfies Uber's obligation to respond to the Complaint at this stage.  *See Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607-08 (10th Cir. 2011) holding that parties moving to compel arbitration need not file an answer or assert potential defenses because such a requirement would undercut the "right not to litigate"); *JS Barkats, PLLC v. BE, Inc.*, No. 12 Civ. 6779(JFK), 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013) ("[P]arties are permitted to file motions to stay in lieu of an answer or other dispositive motions.").  Uber reserves the right to file a Rule 12(b) motion at a later time.  *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988) (holding that a prior motion to dismiss or stay based on grounds other than Rule 12 did not bar a later Rule 12(b) motion); *Marchand v. Northrop Grumman Corp.*, No. 16-cv-06825-BLF, 2017 WL 2633132, at *6 (N.D. Cal. June 19, 2017) (noting the case law holding that "Defendant's Motion to Compel Arbitration and to Dismiss suffices as a 'responsive pleading' to Plaintiff's Complaint or as an unenumerated motion under Rule 12(b)" (citation omitted)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: July 27, 2018

TIFFANY CHEUNG
ADAM J. HUNT, *pro hac vice*
LUCIA X. ROIBAL
MORRISON & FOERSTER LLP


By:   */s/ Tiffany Cheung*
　　　TIFFANY CHEUNG

Attorneys for Defendants
UBER TECHNOLOGIES, INC.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 2

    A.      Plaintiff Voluntarily Registered for Uber's Services. .............................. 2

    B.      Plaintiff Agreed to Arbitrate His Claims. ................................................ 5

    C.      Plaintiff Agreed to Uber's Privacy Policy. .............................................. 7

    D.      Plaintiff Ignored His Arbitration Agreement and Filed Suit.................... 7

III.    LEGAL STANDARD ........................................................................................... 8

    A.      The FAA Governs the Arbitration Agreement......................................... 8

    B.      California Law Governs Any Dispute Concerning the Enforceability Or Scope of the Arbitration Agreement. ......................................................... 9

    C.      Plaintiff Agreed to Arbitrate "Gateway" Arbitrability Issues................ 10

    D.      Even If the Court Finds That It, Rather Than the Arbitrator, Should Decide Arbitrability, Plaintiff's Claims Must Be Resolved Through Arbitration. ........... 12

        1.      Plaintiff Entered Into a Valid Agreement to Arbitrate............................ 12

        2.      Plaintiff's Claims Are Covered by the Arbitration Agreement. ............... 14

        3.      The Arbitration Agreement Is Not Unconscionable. ................................ 16

    E.      Plaintiff Must Arbitrate His Claims On An Individual Basis. ................. 18

    F.      This Action Should Be Stayed Pending Completion of Plaintiff's Individual Arbitration.............................................................................. 18

IV.     CONCLUSION .................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*5381 Partners LLC v. Shareasale.com, Inc.*,
   No. 12-CV-4263 (JFB)(AKT), 2013 WL 5328324 (E.D.N.Y. Sept. 23, 2013).......................13

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*,
   855 F.2d 1470, 1475 (9th Cir. 1988)..................................................................................... i

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995)..............................................................................................................8

*Amirhamzeh v. Wells Fargo Bank, N.A.*,
   No. 14-cv-02123-VC, 2014 WL 12610227 (N.D. Cal. Oct. 31, 2014)....................................18

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)........................................................................................................8, 18

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986).............................................................................................................14

*Belton v. Comcast Cable Holdings, LLC*,
   151 Cal. App. 4th 1224 (2007).............................................................................................16

*Binder v. Aetna Life Ins. Co.*,
   75 Cal. App. 4th 832 (1999).................................................................................................12

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015).......................................................................................10, 11

*Bruster v. Uber Techs., Inc.*,
   188 F. Supp. 3d 658 (N.D. Ohio May 23, 2016),
   *recons. denied*, 2016 WL 4086786 (N.D. Ohio Aug. 2, 2016)...................................................2

*Carey v. Uber Techs., Inc.*,
   No. 1:16-cv-1058, 2017 WL 1133936 (N.D. Ohio Mar. 27, 2017)............................................2

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991).............................................................................................................12

*Cavallo v. Uber Techs, Inc.*,
   No. 16-4264 (FLW), 2017 WL 2362851 (D.N.J. May 31, 2017)...............................................2

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000)................................................................................................8

sf-3920098

*Congdon v. Uber Techs., Inc.*,
226 F. Supp. 3d 983 (N.D. Cal. 2016) ........................................................................2

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) ...................................................................1, 14

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
748 F.3d 249 (5th Cir. 2014)....................................................................................10

*Crawford v. Beachbody, LLC*,
No. 14cv1583-GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ...............13

*Crook v. Wyndham Vacation Ownership, Inc.*,
No. 13-cv-03669-WHO, 2013 WL 11275036 (N.D. Cal. Nov. 8, 2013) ................11

*Cubria v. Uber Techs., Inc.*,
242 F. Supp. 3d 541 (W.D. Tex. 2017)......................................................................1

*Cullinane v. Uber Techs., Inc.*,
893 F.3d 53 (1st Cir. 2018) ......................................................................................14

*Davis v. Uber Techs, Inc.*,
No. 16-6122, 2017 WL 3167807 (E.D. Pa. July 25, 2017).........................................2

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ..................................................................................................18

*Delgado v. Progress Fin. Co.*,
No. 1:14-cv-00033-LJO-MJS, 2014 WL 1756282 (E.D. Cal. May 1, 2014) ...........15

*DIRECTV, Inc. v. Imburgia*,
136 S. Ct. 463 (2015)................................................................................................18

*Dream Theater, Inc. v. Dream Theater*,
124 Cal. App. 4th 547 (2004)...................................................................................11

*Druyan v. Jagger*,
508 F. Supp. 2d 228 (S.D.N.Y. 2007).......................................................................13

*Epic Sys. Corp. v. Lewis*,
138 S.Ct. 1612 (2018) ...............................................................................................18

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...................................................................13

*Fisher v. Rent-A-Ctr., Inc.*,
No. 2:14-cv-00918-MCE-AC, 2014 WL 3729553 (E.D. Cal. July 24, 2014) ..........15

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012).......................................................................13

*Greenspan v. LADT, LLC,*
    185 Cal. App. 4th 1413 (2010)............................................................................................11

*Guan v. Uber Techs., Inc.,*
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ...................................................................................2

*Gunn v. Uber Techs., Inc.,*
    No. 1:16-cv-01668-SEB-MJD, 2017 WL 386816 (S.D. Ind. Jan. 27, 2017)...........................2

*Hancock v. Am. Tel. & Tel. Co.,*
    701 F.3d 1248 (10th Cir. 2012).............................................................................................13

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002).................................................................................................................12

*Iskanian v. CLS Transp. L.A., LLC,*
    59 Cal. 4th 348 (2014) ...........................................................................................................18

*James v. Portfolio Recovery Assocs., LLC,*
    No. 14-cv-03889-RMW, 2015 WL 720195 (N.D. Cal. Feb. 20, 2015).....................................9

*Johnmohammadi v. Bloomingdale's, Inc.,*
    755 F.3d 1072 (9th Cir. 2014)................................................................................................18

*Jones v. Wells Fargo Bank,*
    112 Cal. App. 4th 1527 (2003)...............................................................................................17

*JS Barkats, PLLC v. BE, Inc.,*
    No. 12 Civ. 6779(JFK), 2013 WL 444919 (S.D.N.Y. Feb. 6, 2013) ..........................................i

*Koyoc v. Progress Fin. Co.,*
    No. CV 13-09165-RSWL, 2014 WL 1878903 (C.D. Cal. May 9, 2014) .................................15

*Lainer v. Uber Techs., Inc.,*
    No. CV 15-09925-BRO, 2016 WL 7444925 (C.D. Cal. May 11, 2016) ......................12, 14, 18

*Lamkin v. Morinda Props. Weight Parcel, LLC,*
    440 F. App'x 604 (10th Cir. 2011) ...........................................................................................i

*Lamour v. Uber Techs, Inc.,*
    No. 1:16-CIV-21449, 2017 WL 878712 (S.D. Fla. Mar. 1, 2017) ...........................................2

*Lee v. Uber Techs., Inc.,*
    208 F. Supp. 3d 886 (N.D. Ill. 2016) ......................................................................................2

*Marc v. Uber Techs., Inc.,*
    No. 2:16-cv-579-FtM-99MRM, 2016 WL 7210886 (M.D. Fla. Dec. 13, 2016) ........................2

*Marchand v. Northrop Grumman Corp.,*
    No. 16-cv-06825-BLF, 2017 WL 2633132 (N.D. Cal. June 19, 2017) ......................................i

*Meyer v. Kalanick*,
200 F. Supp. 3d 408 (S.D.N.Y. 2016),
*vacated, Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017)................................9

*Meyer v. Kalanick*,
291 F. Supp. 3d 526 (S.D.N.Y. 2018) ...................................................................14

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)...................................................................1, 13, 14

*Micheletti v. Uber Techs., Inc.*,
213 F. Supp. 3d 839 (W.D. Tex. 2016) ...................................................................2

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016)...................................................................1

*Morris v. Redwood Empire Bancorp*,
128 Cal. App. 4th 1305 (2005)...................................................................17

*Mortensen v. Bresnan Commc'ns, LLC*,
722 F.3d 1151 (9th Cir. 2013) ...................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)...................................................................12

*Mumin v. Uber Techs., Inc.*,
239 F. Supp. 3d 507 (E.D.N.Y. 2017) ...................................................................2

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)...................................................................9, 12

*Olivares v. Uber Techs, Inc.*,
No. 16 C 6062, 2017 WL 3008278 (N.D. Ill. July 14, 2017) ...................................2

*Oracle Am., Inc. v. Myriad Grp., A.G.*,
724 F.3d 1069 (9th Cir. 2013)...................................................................10

*Ortega v. Uber Techs., Inc.*,
No. 15-CV-7387 (NGG) (JO), 2017 WL 1737636 (E.D.N.Y. May 2, 2017)..............2

*PacifiCare Health Sys., Inc. v. Book*,
538 U.S. 401 (2003) ...................................................................12

*Peng v. Uber Techs., Inc.*,
237 F. Supp. 3d 36 (E.D.N.Y. 2017) ...................................................................2

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*
(2012) 55 Cal.4th 223 ...................................................................16, 17

vii

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ........................................................................................................10

*Republic of Nicaragua v. Standard Fruit Co.*,
   937 F.2d 469 (9th Cir. 1991) ........................................................................................18

*Richemond v. Uber Techs., Inc.*,
   263 F. Supp. 3d 1312 (S.D. Fla. 2017) ..........................................................................2

*Rimel v. Uber Techs., Inc.*,
   No. 6:15-cv-2191-Orl-41KRS, 2016 WL 6246812 (M.D. Fla. Aug. 4, 2016) ..........................2

*Rodriguez v. Am. Techs., Inc.*,
   136 Cal. App. 4th 1110 (2006)......................................................................................11

*Roszak v. U.S. Foodservice Inc.*,
   628 F. App'x 513 (9th Cir. 2016) ..................................................................................11

*Sanchez v. Valencia Holding Co.*,
   61 Cal. 4th 899 (2015) .............................................................................................16, 17

*Scroggins v. Uber Techs, Inc.*,
   No. 1:16-cv-01419-SEB-MJD, 2017 WL 373299 (S.D. Ind. Jan. 26, 2017).........................2

*Sena v. Uber Techs. Inc.*,
   No. CV-15-02418-PHX-DLR, 2016 WL 1376445 (D. Ariz. Apr. 7, 2016),
   *recons. denied*, 2016 WL 4064584 (D. Ariz. May 03, 2016) ......................................2

*Serafin v. Balco Props. Ltd.*,
   235 Cal. App. 4th 165 (2015)........................................................................................17

*Sherman v. AT&T Inc.*,
   No. 11 C 5857, 2012 WL 1021823 (N.D. Ill. Mar. 26, 2012) ....................................13

*Sherman v. RMH, LLC*,
   No. 13cv1986-WQH-WMc, 2014 WL 30318 (S.D. Cal. Jan. 2, 2014)...................16

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999)..........................................................................................15

*Singh v. Uber Techs., Inc.*,
   235 F. Supp. 3d 656 (D.N.J. 2017) .................................................................................2

*Snap-on Bus. Sols. Inc. v. O'Neil & Assocs., Inc.*,
   708 F. Supp. 2d 669 (N.D. Ohio 2010) ......................................................................13

*Starke v. Gilt Groupe, Inc.*,
   No. 13 Civ. 5497(LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ....................13

*Suarez v. Uber Techs., Inc.*,
  No. 8:16-cv-166-T-30MAP, 2016 WL 2348706 (M.D. Fla. May 4, 2016),
  *aff'd*, 688 F. App'x 777 (11th Cir. 2017) ................................................................................2

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) .................................................................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  Nos. M 07-1827 SI, C 09-05609 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) .................15

*Ulbrich v. Overstock.com, Inc.*,
  887 F. Supp. 2d 924 (N.D. Cal. 2012) .................................................................................17

*United States v. Sutcliffe*,
  505 F.3d 944 (9th Cir. 2007) .................................................................................................9

*Van Patten v. Vertical Fitness Grp., LLC*,
  847 F.3d 1037 (9th Cir. 2017) .............................................................................................16

*Varon v. Uber Techs., Inc.*,
  No. MJG-15-3650, 2016 WL 1752835 (D. Md. May 3, 2016),
  *recons. denied*, 2016 WL 3917213 (D. Md. July 20, 2016) ....................................................2

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
  25 Cal. App. 3d 987 (1972) ..................................................................................................12

*Zawada v. Uber Techs., Inc.*,
  No. 16-cv-11334, 2016 WL 7439198 (E.D. Mich. Dec. 27, 2016),
  *judgment aff'd*, 727 F. App'x 839 (6th Cir. 2018) ..................................................................2

*Zorilla v. Uber Techs, Inc.*,
  No. 4:16-CV-615, 2017 WL 3278061 (S.D. Tex. Mar. 16, 2017) ............................................2

**Statutes**

Federal Arbitration Act,
  9 U.S.C. § 1 *et seq.* .................................................................................................................i
  9 U.S.C. § 1 ...........................................................................................................................8
  9 U.S.C. § 2 ...........................................................................................................................8
  9 U.S.C. § 3 .........................................................................................................................18
  9 U.S.C. § 4 .........................................................................................................................10
  9 U.S.C. § 9 .........................................................................................................................18
  9 U.S.C. § 10 .......................................................................................................................18
  9 U.S.C. § 11 .......................................................................................................................18

Telephone Consumer Protection Act,
  47 U.S.C. § 227 ........................................................................................................1, 7, 15, 16

sf-3920098

**Rules**

AAA Commercial Arbitration Rules and Mediation Procedures, Rule 7(a),
       https://www.adr.org/sites/default/files/CommercialRules_Web.pdf .......................................10

1

**STATEMENT OF ISSUES TO BE DECIDED**

2  This motion raises the following issues:

3      1.      Did Plaintiff enter into a binding agreement to arbitrate his claims in this case?

4      2.      Does the "delegation" clause in Plaintiff's Arbitration Agreement require the

5  arbitrator to decide all gateway issues of arbitrability?

6      3.      If not, does the Arbitration Agreement require this Court to compel Plaintiff's

7  claims to arbitration?

8      4.      Should the Court stay this case pending Plaintiff's arbitration?

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

sf-3920098

1

**MEMORANDUM IN SUPPORT**

2

## I.    INTRODUCTION

3        Plaintiff Lucius Manning cannot unilaterally repudiate his binding contract with Uber by

4  bringing a putative Telephone Consumer Protection Act ("TCPA") class action in federal court.

5  Although Plaintiff denies any relationship with Uber, Uber's records demonstrate otherwise.

6  Plaintiff created an Uber account in August 2015 and, as a part of the account creation process,

7  provided Uber with the telephone number that received the alleged text message at issue in this

8  case.  When Plaintiff created his Uber account, he agreed to be bound by Uber's Terms and

9  Conditions, which included a clear and conspicuous arbitration agreement that covers his claims

10  in this case, delegates any disputes regarding arbitrability to the arbitrator, and waives any right to

11  bring a class action (the "Arbitration Agreement").  The Court should reject Plaintiff's efforts to

12  evade the Terms to which he agreed and order Plaintiff to arbitrate his claims.

13        Under the terms of the Arbitration Agreement, Plaintiff agreed to arbitrate "any dispute,

14  claim or controversy arising out of or relating to" his relationship with Uber.  Plaintiff also agreed

15  to the delegation clause in the Arbitration Agreement, which specifies that an arbitrator—not a

16  court—will resolve any disputes about the application, scope, or enforceability of the Arbitration

17  Agreement.  Ignoring his Arbitration Agreement, Plaintiff filed a putative class action in this

18  Court.  Uber vigorously denies Plaintiff's allegations, but the Court need not (and should not)

19  resolve the underlying claims.  Plaintiff's claims fall squarely within the scope of the Arbitration

20  Agreement, and the Court should therefore compel Plaintiff to arbitration.

21        Judges in the Northern District and nationwide have affirmed the Arbitration Agreement

22  as valid and enforceable.  *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017);

23  *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017); *Cubria v. Uber Techs.,*

24  *Inc.*, 242 F. Supp. 3d 541, 548-49 (W.D. Tex. 2017); *Lainer v. Uber Techs., Inc.*, No. CV 15-

25  09925-BRO (MRWx), 2016 WL 7444925, at *3-4 (C.D. Cal. May 11, 2016).  Moreover, the

26  Ninth Circuit recently upheld a similar version of Uber's arbitration agreement, rejecting

27  numerous challenges to the enforceability of that agreement the district court had erroneously

28  accepted.  *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016).  So have at least 24

1

1   different district courts.[2]

2   The Court should grant Uber's motion and compel arbitration of Plaintiff's claims.

3   **II.      FACTUAL BACKGROUND**

4   **A.      Plaintiff Voluntarily Registered for Uber's Services.**

5   Uber offers a software application (the "Uber App") that allows the public to request

6   transportation services from independent, third-party transportation providers in their local area.

7   (Declaration of Naveen Narayanan in Support of Defendant Uber Technologies, Inc.'s Motion to

8   Compel Arbitration and Stay Litigation ("Narayanan Decl."), ¶ 3.)  Before riders can request and

9   pay for third-party transportation services via the Uber App, riders must first register with Uber

10  by creating an Uber account and agreeing to Uber's Terms and Conditions, including the

11  Arbitration Agreement.  (*Id.*, ¶ 4.)

12  Based on Uber's records, a rider account registered to Plaintiff was created on August 2,

13  2015. (*Id.*, ¶ 5.)  As a part of the account creation process, Plaintiff provided his cellular

14  telephone number to Uber.  (*Id.*, ¶ 7(a)-(b).)  Further, Uber's records show that the cellular

15

16      [2] *See, e.g.*, *Davis v. Uber Techs, Inc.*, No. 16-6122, 2017 WL 3167807 (E.D. Pa. July 25,
    2017); *Olivares v. Uber Techs, Inc.*, No. 16 C 6062, 2017 WL 3008278 (N.D. Ill. July 14, 2017);

17  *Cavallo v. Uber Techs, Inc.*, No. 16-4264 (FLW), 2017 WL 2362851 (D.N.J. May 31, 2017);
    *Zorilla v. Uber Techs, Inc.*, No. 4:16-CV-615, 2017 WL 3278061 (S.D. Tex. Mar. 16, 2017);

18  *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507 (E.D.N.Y. 2017); *Micheletti v. Uber Techs.,
    Inc.*, 213 F. Supp. 3d 839 (W.D. Tex. 2016); *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886 (N.D.

19  Ill. 2016); *Bruster v. Uber Techs., Inc.*, 188 F. Supp. 3d 658 (N.D. Ohio May 23, 2016), *recons.
    denied*, 2016 WL 4086786 (N.D. Ohio Aug. 2, 2016); *Varon v. Uber Techs., Inc.*, No. MJG-15-

20  3650, 2016 WL 1752835 (D. Md. May 3, 2016), *recons. denied*, 2016 WL 3917213 (D. Md. July
    20, 2016); *Suarez v. Uber Techs., Inc.*, No. 8:16-cv-166-T-30MAP, 2016 WL 2348706 (M.D. Fla.

21  May 4, 2016), *aff'd*, 688 F. App'x 777 (11th Cir. 2017); *Sena v. Uber Techs. Inc.*, No. CV-15-
    02418-PHX-DLR, 2016 WL 1376445 (D. Ariz. Apr. 7, 2016), *recons. denied*, 2016 WL 4064584

22  (D. Ariz. May 03, 2016); *Rimel v. Uber Techs., Inc.*, No. 6:15-cv-2191-Orl-41KRS, 2016 WL
    6246812 (M.D. Fla. Aug. 4, 2016); *Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36 (E.D.N.Y.

23  2017); *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983 (N.D. Cal. 2016); *Richemond v. Uber
    Techs., Inc.*, 263 F. Supp. 3d 1312 (S.D. Fla. 2017); *Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d

24  711 (E.D.N.Y. 2017); *Zawada v. Uber Techs., Inc.*, No. 16-cv-11334, 2016 WL 7439198 (E.D.
    Mich. Dec. 27, 2016), *judgment aff'd*, 727 F. App'x 839 (6th Cir. 2018); *Carey v. Uber Techs.,

25  Inc.*, No. 1:16-cv-1058, 2017 WL 1133936 (N.D. Ohio Mar. 27, 2017); *Lamour v. Uber Techs.
    Inc.*, No. 1:16-CIV-21449, 2017 WL 878712 (S.D. Fla. Mar. 1, 2017); *Scroggins v. Uber Techs,

26  Inc.*, No. 1:16-cv-01419-SEB-MJD, 2017 WL 373299 (S.D. Ind. Jan. 26, 2017); *Gunn v. Uber
    Techs., Inc.*, No. 1:16-cv-01668-SEB-MJD, 2017 WL 386816 (S.D. Ind. Jan. 27, 2017); *Singh v.

27  Uber Techs., Inc.*, 235 F. Supp. 3d 656 (D.N.J. 2017); *Ortega v. Uber Techs., Inc.*, No. 15-CV-
    7387 (NGG) (JO), 2017 WL 1737636 (E.D.N.Y. May 2, 2017); *Marc v. Uber Techs., Inc.*, No.

28  2:16-cv-579-FtM-99MRM, 2016 WL 7210886 (M.D. Fla. Dec. 13, 2016).

1   telephone number to which Uber allegedly sent the text messages at issue is the same number

2   Plaintiff provided when he created his Uber account.  (*Id.*, ¶ 5.)

3       Plaintiff necessarily would have had to complete the registration process to create his

4   Uber account.  (*Id.*, ¶ 7(f).)  Uber's records show that Plaintiff's account was created using a

5   smartphone with an Android operating system (an "Android device").  (*Id.*, ¶ 5.)  And, at the time

6   Plaintiff created his account, the registration process for an Android device involved three steps,

7   each of which was confined to a single screen.  (*Id.*, ¶¶ 7(a)-(f); *id.*, Exs. A-C.)

8       After successfully downloading the Uber App and clicking the "REGISTER" button, the

9   user was prompted on the first screen, titled "Register," to enter his name, email address, mobile

10  phone number, and a password, or to sign up with the user's Google+ or Facebook account.  (*Id.*,

11  ¶ 7(a); *id.*, Ex. A.)  According to Uber's records, Plaintiff did not sign up using Google+ or

12  Facebook.  (*Id.*, ¶ 7(b).)  For users like Plaintiff who did not sign up using Google+ or Facebook,

13  after filling in the above fields, the user can then advance to the next screen by clicking "Next."

14  (*Id.*)



15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  (*Id.*, Ex. B.)

2          On the second screen, the user is prompted to enter his credit card information, or to opt to

3  make payments using PayPal or Google wallet.  (*Id.*, ¶ 7(c).)  According to Uber's records,

4  Plaintiff entered his credit card information in the text box provided.  (*Id.*, ¶ 7(d).)  The second

5  screen also includes the following notice:  "BY CONTINUING, YOU AGREE TO OUR <u>TERMS</u>

6  <u>OF SERVICE & PRIVACY POLICY.</u>"  The phrase "<u>TERMS OF SERVICE & PRIVACY</u>

7  <u>POLICY</u>" is in all-caps, underlined, and in bright blue text, all of which sets the text apart from

8  the other text on the screen and indicates that it is a hyperlink.  (*Id.*, ¶ 7(c).)  Clicking the

9  hyperlink takes the user to a screen that allows the user to access the "Terms and Conditions" and

10  "Privacy Policy" documents then in effect.  (*Id.*)  As demonstrated by the screenshot below, the

11  hyperlink is immediately visible when the user arrives on this second screen.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  (*Id.*, Ex. C.)

28

1    In order to complete the account registration process, the user must then click the

2    "Register" button, which appears above the link to the Terms and Conditions and Privacy Policy

3    on the final screen.  (*Id.*, ¶ 7(e).)  Plaintiff could not have completed the registration process and

4    requested a ride without completing these steps.  (*Id.*, ¶ 7(f).)  And Uber's records demonstrate

5    that Plaintiff completed all of these necessary steps, including voluntarily providing his mobile

6    phone number to Uber and affirmatively clicking "REGISTER" to confirm his agreement to the

7    Terms & Conditions and Privacy Policy (*Id.*, ¶¶ 7(a) – (f).)

8            **B.       Plaintiff Agreed to Arbitrate His Claims.**

9    When Plaintiff completed the registration process, he unequivocally agreed to the April 8,

10   2015 Terms and Conditions (hereinafter "Terms and Conditions").  (*See* Declaration of Dylan

11   Tonti in Support of Defendant Uber Technologies, Inc.'s Motion to Compel Arbitration and Stay

12   Litigation ("Tonti Decl."), ¶ 3; *id.*, Ex. A.)

13   The first section of the Terms and Conditions in effect when Plaintiff created his account

14   was titled "CONTRACTUAL RELATIONSHIP."  That paragraph provides that "[y]our access

15   and use of the Services constitutes your agreement to be bound by these Terms, which establishes

16   a contractual relationship between you and Uber.  If you do not agree to these Terms, you may

17   not access or use the Services."  (*Id.*, Ex. A at 1.)  Pursuant to its Terms and Conditions, Uber has

18   provided Plaintiff with access to its Services and on August 3, 2015, Plaintiff requested a trip

19   using the Uber App.  (*Id.*, ¶ 5.)

20   Another section, entitled "DISPUTE RESOLUTION" (*id.*, Ex. A. at 8-9), states in

21   relevant part:

22         **You agree that any dispute, claim or controversy arising out of or**
      **relating to the Terms or the breach, termination, enforcement,**
23         **interpretation or validity thereof or the use of the Services**
      **(collectively "*Disputes*") will be settled by binding arbitration between**
24         **you and Uber,** except that each party retains the right to bring an
      individual action in small claims court and the right to seek injunctive or
25         other equitable relief in a court of competent jurisdiction to prevent the
      actual or threatened infringement, misappropriation or violation of a
26         party's copyrights, trademarks, trade secrets, patents or other intellectual
      property rights.  **You acknowledge and agree that you and Uber are**
27         **each waiving the right to a trial by jury or to participate as a plaintiff**
      **or class in any purported class action or representative proceeding.**
28         Further, unless both you and Uber otherwise agree in writing, the

> arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding."

(*Id.* at 8-9 (emphasis added).)  The Terms and Conditions also specify that the American Arbitration Association ("AAA") will oversee any dispute and identify the particular arbitration rules that will govern:

> ARBITRATION RULES AND GOVERNING LAW.  The arbitration will be administered by the American Arbitration Association ("*AAA*") in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "*AAA Rules*") then in effect, except as modified by this "Dispute Resolution" section.  (The AAA Rules are available at www.adr.org/arb_med (http://www.adr.org/arb_med) or by calling the AAA at 1-800-778-7879.)  The Federal Arbitration Act will govern the interpretation and enforcement of this Section.

(*Id.* at 9.)

The terms of the Arbitration Agreement permit the user to arbitrate a dispute in the county where he or she resides, and they allow for recovery of attorneys' fees only by the user, not Uber:

> ARBITRATION LOCATION AND PROCEDURE.  Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside.

(*Id.*)

> ARBITRATOR'S DECISION. . . . If you prevail in arbitration you will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law. Uber will not seek, and hereby waives all rights Uber may have under applicable law to recover, attorneys' fees and expenses if Uber prevail[s] in arbitration.

(*Id.* at 9-10.)

Further, under the Arbitration Agreement, Uber bears the sole cost of filing, administrative, and arbitrator fees for certain nonfrivolous claims:

> FEES. Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules. However, if your claim for damages does not exceed $75,000, Uber will pay all such fees unless the arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)).

(*Id.* at 10.)

1    In sum, the Arbitration Agreement contains a detailed delineation of the rights and

2    waivers of the parties, including the waiver of any right to prosecute a class or representative

3    action, and provides numerous protections to the user.

4          **C.**      **Plaintiff Agreed to Uber's Privacy Policy.**

5    By creating an Uber account, Plaintiff also agreed to Uber's Privacy Policy, which is

6    incorporated into the Terms and Conditions, and explains how Uber uses the personal information

7    it collects.  (Tonti Decl., Ex. A at 2 ("Our collection and use of personal information in

8    connection with the Services is as provided in Uber's Privacy Policy located at

9    https://www.uber.com/legal/usa/privacy.").)  The Privacy Policy states that Uber "collect[s]

10   information you provide directly to us, such as . . . [your] name, email, [and] ***phone number***."

11   (*Id.*, Ex. B at 2 (emphasis added.)  The Privacy Policy further specifies that Uber "may use the

12   information we collect about you to: . . . [s]end you communications we think will be of interest

13   to you, including information about products, services, promotions, news, and events of Uber and

14   other companies."  (*Id.*, Ex. B at 4.)

15   Uber's Terms and Conditions also specify that:

16       By creating an Account, you agree that the Services may send you
     informational text (SMS) messages as part of the normal business
17   operation of your use of the Services.  You may opt-out of receiving text
     (SMS) messages from Uber at any time by texting the word STOP to
18   89203s from the mobile device receiving the messages.

19   (*Id.*, Ex. A at 4.)

20         **D.**      **Plaintiff Ignored His Arbitration Agreement and Filed Suit.**

21   Plaintiff alleges that Uber violated the TCPA by sending him five text messages to his

22   cellular phone in April and May 2018.  (Compl. ¶¶ 12-15.)  Each of these five messages allegedly

23   stated "Uber code" or "Your Uber code" followed by a four-digit code.  (*Id.*)  Plaintiff does not

24   allege that the text messages contained any other content.  (*Id.*)  Nevertheless, Plaintiff makes the

25   conclusory allegation that these text messages were "solicitations" that "make[] reference to the

26   Uber brand name and requires Plaintiff to inquire further into Uber's services to attempt to

27   understand why he has been texted."  (*Id.* ¶ 16.)    This is precisely the type of dispute

28   encompassed by the Arbitration Agreement because the Terms and Conditions and Privacy Policy

7

1    directly address Uber's right to contact users.  Despite consenting to the Arbitration Agreement

2    and binding class action waiver, Plaintiff filed this putative class action lawsuit in violation of his

3    Arbitration Agreement.

4        **III.    LEGAL STANDARD**

5        The Federal Arbitration Act ("FAA") reflects a liberal federal policy favoring arbitration,

6    and requires that arbitration agreements be rigorously enforced.  *See AT&T Mobility LLC v.*

7    *Concepcion*, 563 U.S. 333, 339 (2011) ("courts must place arbitration agreements on an equal

8    footing with other contracts" (citation omitted)).  "[T]he FAA's purpose is to give preference

9    (instead of mere equality) to arbitration provisions."  *Mortensen v. Bresnan Commc'ns, LLC*, 722

10   F.3d 1151, 1160 (9th Cir. 2013).  "As arbitration is favored, those parties challenging the

11   enforceability of an arbitration agreement bear the burden of proving that the provision is

12   unenforceable."  *Id.* at 1157 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91

13   (2000)).

14       The FAA provides that contractual arbitration agreements "shall be valid, irrevocable, and

15   enforceable, save upon such grounds as exist at law or in equity for the revocation of any

16   contract."  9 U.S.C. § 2.  A court *must* compel arbitration if the transaction involves interstate

17   commerce and (1) a written arbitration agreement exists; and (2) the agreement encompasses the

18   dispute at issue.  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.

19   2000).

20       **A.    The FAA Governs the Arbitration Agreement.**

21       Both the express Terms and Conditions and the nature of the relationship between the

22   parties confirm that the FAA governs the Arbitration Agreement.  First, the Arbitration

23   Agreement itself provides that "[t]he Federal Arbitration Act will govern the interpretation and

24   enforcement of this Section."  (Tonti Decl., Ex. A at 9.)  Second, the FAA applies to

25   agreements—like the Agreement here—that evidence a transaction involving interstate

26   commerce.  *See* 9 U.S.C. §§ 1-2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-77

27   (1995) (interpreting the FAA's "involving commerce" provision as broadly as the phrase

28   "affecting commerce").  Where, as here, the underlying transactions involve the use of Internet

1   and cellular technologies to transmit user requests across the United States, the "involving

2   commerce" requirement has been met.  *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175

3   (9th Cir. 2014) (applying the FAA to a dispute involving internet commerce); *United States v.*

4   *Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("the Internet is an instrumentality and channel of

5   interstate commerce" (citation omitted)).

6          Thus, the FAA clearly controls.  And under the FAA, the Court should enforce the

7   Arbitration Agreement.

8                  **B.      California Law Governs Any Dispute Concerning the Enforceability**
                            **Or Scope of the Arbitration Agreement.**
9

10         California law applies to any threshold "gateway" disputes about the enforcement of the

11  Arbitration Agreement.

12         When a "case is based on federal question jurisdiction, federal common law supplies the

13  choice-of-law rules."  *See James v. Portfolio Recovery Assocs., LLC*, No. 14-cv-03889-RMW,

14  2015 WL 720195, at *3 (N.D. Cal. Feb. 20, 2015).  Under federal common law, which follows

15  section 187 of the Restatement (Second) of Conflicts law, "courts honor the parties' choice-of-

16  law to govern their claims in dispute, unless: (1) 'the chosen state has no substantial relationship

17  to the parties or the transaction' or (2) honoring the parties' choice 'would be contrary to the

18  fundamental policy of a state that has a materially greater interest' in the dispute."  *Id.*  (applying

19  the contract's choice-of-law provision to the question of who is entitled to invoke the arbitration

20  provision).

21         Here, because, the Terms and Conditions contain a Choice of Law provision that states

22  that "[t]hese Terms are governed by and construed in accordance with the laws of the State of

23  California, U.S.A., without giving effect to any conflict of law principles,"  (Tonti Decl., Ex. A.

24  at 10), California law applies.  First, "the fact that Uber—one of the parties to the alleged

25  contract, and the contract's drafter—is located in California weighs heavily in favor of the

26  application of California law."  *Meyer v. Kalanick*, 200 F. Supp. 3d 408, 413 (S.D.N.Y. 2016),

27  *vacated, Meyer v. Uber Techs., Inc.*, 868 F.3d at 74 ("We agree with the district court's

28

9

1    determination that California state law applies[.]").  Moreover, no state has a "materially greater

2    interest" in the dispute.  As Plaintiff alleges, "Plaintiff's claims arose and emanated from

3    [California] and [] Uber maintains its primary place of business in [California]."  (Compl. ¶ 7.)

4    Accordingly, California law applies to the interpretation and enforcement of the Arbitration

5    Agreement.

6                   **C.       Plaintiff Agreed to Arbitrate "Gateway" Arbitrability Issues.**

7          The FAA requires courts to compel arbitration "in accordance with the terms of the

8    agreement" upon the motion of either party to the agreement, consistent with the principle that

9    arbitration is a matter of contract.  9 U.S.C. § 4.  When parties "clearly and unmistakably"

10   demonstrate their intent to have the arbitrator decide arbitrability, those issues must be referred to

11   the arbitrator.  *Oracle Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013); *see*

12   *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway

13   issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal

14   court to enforce, and the FAA operates on this additional arbitration agreement just as it does on

15   any other."); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-32 (9th Cir. 2015) ("[A] court must

16   enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to

17   the arbitrator . . . ."); *accord Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249,

18   262-63 (5th Cir. 2014) (If the parties have delegated questions of arbitrability to the arbitrator,

19   "whether the Plaintiffs' claims are subject to arbitration must be decided in the first instance by

20   the arbitrator, not a court.").

21         Here, the parties "clearly and unmistakably" delegated the gateway issue of arbitrability to

22   the arbitrator by incorporating the AAA Commercial Arbitration Rules.  (Tonti Decl., Ex. A at 9.)

23   Specifically, Rule 7(a) of the AAA Rules provides:  "The arbitrator shall have the power to rule

24   on his or her own jurisdiction, including any objections with respect to the existence, scope, or

25

26

27

28

1  validity of the arbitration agreement or to the arbitrability of any claim . . . ."  AAA Commercial

2  Arbitration Rules and Mediation Procedures at R-7(a).[3]

3       This language in the Arbitration Agreement is "clear and unmistakable" evidence that the

4  parties agreed to delegate gateway questions of arbitrability to the arbitrator.  Indeed, in *Brennan*,

5  the Ninth Circuit addressed nearly identical contractual language and held that "incorporation of

6  the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to

7  arbitrate arbitrability."  *Brennan*, 796 F.3d at 1130; *see also Roszak v. U.S. Foodservice Inc.*, 628

8  F. App'x 513, 514 (9th Cir. 2016) ("[T]he parties incorporated the [AAA] rules into their

9  agreement and therefore agreed to arbitrate the question of arbitrability.").  Numerous federal

10  courts around the country have reached the same conclusion.  *Brennan*, 796 F.3d at 1130-31

11  (citing cases); *see also Crook v. Wyndham Vacation Ownership, Inc*., No. 13-cv-03669-WHO,

12  2013 WL 11275036, at *5 (N.D. Cal. Nov. 8, 2013) ("Virtually every circuit to have considered

13  the issue has determined that incorporation of the [AAA] rules constitutes clear and unmistakable

14  evidence that the parties agreed to arbitrate arbitrability.") (quoting *Oracle*, 724 F.3d at 1074).

15  Likewise, California authorities compel the same result.  *See, e.g.*, *Rodriguez v. Am. Techs., Inc.*,

16  136 Cal. App. 4th 1110, 1123 (2006) (By incorporating AAA rules, "the parties clearly evidenced

17  their intention to accord the arbitrator the authority to determine issues of arbitrability."); *accord*

18  *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 557 (2004) (incorporation of AAA

19  rules deemed "clear and unmistakable evidence of the intent that the arbitrator will decide

20  whether a Contested Claim is arbitrable"); *Greenspan v. LADT, LLC*, 185 Cal. App. 4th 1413,

21  1442 (2010) ("Thus, 'when . . . parties explicitly incorporate rules that empower an arbitrator to

22  decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the

23  parties' intent to delegate such issues to an arbitrator.'" (citations omitted)).

24       Under this well-settled precedent, Plaintiff therefore must submit any threshold issues of

25  arbitrability to the arbitrator in the first instance.

26

27      [3] The AAA rules can be found at:

28  https://www.adr.org/sites/default/files/CommercialRules_Web.pdf  (effective Oct. 1, 2013; last visited July 17, 2018).

sf-3920098

1

**D.      Even If the Court Finds That It, Rather Than the Arbitrator, Should Decide Arbitrability, Plaintiff's Claims Must Be Resolved Through Arbitration.**

2

3      Even if the Court does not enforce the delegation clause—and it should—the Court should

4   nonetheless compel arbitration.  In determining whether to compel arbitration, the Court's role

5   under the FAA is limited to determining (1) whether there is a valid agreement to arbitrate

6   between the parties; and (2) whether the agreement covers the dispute.  *PacifiCare Health Sys.,*

7   *Inc. v. Book*, 538 U.S. 401, 407; n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79,

8   83-84 (2002);  *Lainer v. Uber Techs., Inc.*, 2016 WL 7444925, at *2.  In conducting these

9   inquiries, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should

10  be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

11  U.S. 1, 24-25 (1983).  Both requirements are satisfied here.

12

**1.      Plaintiff Entered Into a Valid Agreement to Arbitrate.**

13      The first issue is whether the parties entered into the Arbitration Agreement contained

14  within the Terms and Conditions.  Clearly, they did.[4]

15      Under California law, mutual assent to contract "may be manifested by written or spoken

16  words, or by conduct," *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999), and

17  acceptance of contract terms may be implied through action or inaction.  *See Carnival Cruise*

18  *Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991).  Thus, "an offeree, knowing that an offer has

19  been made to him but not knowing all of its terms, may be held to have accepted, by his conduct,

20  whatever terms the offer contains."  *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App.

21  3d 987, 992 (1972).

22      For electronic consumer transactions, mutual assent requires "reasonable notice" of the

23  terms of the agreement.  *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d at 1173-79.  The Ninth

24  Circuit has held that reasonable constructive notice occurs when the consumer has inquiry notice

25  of the terms of service—like a hyperlinked alert—and takes an affirmative action to demonstrate

26

27      [4] Plaintiff claims that he "has never had any relationship with Uber." (Compl. ¶ 10.)  But Uber's records demonstrate that Mr. Manning did in fact register to use Uber's services using the same cellular telephone number as the one to which the text messages at issue were sent.  (*See* Narayanan Decl. ¶ 5.)

28

12

1  assent to them. *Id.* at 1176-79. "[W]hen considering the perspective of a reasonable smartphone

2  user, [courts] need not presume that the user has never before encountered an app or entered into

3  a contract using a smartphone." *Meyer*, 868 F.3d at 77. "Moreover, a reasonably prudent

4  smartphone user knows that text that is highlighted in blue and underlined is hyperlinked to

5  another webpage where additional information will be found." *Id.* at 77-78; *see also Fteja v.*

6  *Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (internet users understand that the

7  hyperlinked phrase "Terms of Use" prompts the consumer "to examine terms of sale that are

8  located somewhere else"); *accord In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d

9  1155, 1166 (N.D. Cal. 2016) (choice-of-law clause that was part of defendant's online TOS held

10  enforceable where plaintiffs "had to click a box separately affirming that they had read and

11  agreed to the Terms of Use").

12      Numerous courts addressing the enforceability of similar internet agreements have

13  reached the same conclusion.[5]

14      The Second Circuit has analyzed a nearly identical Uber registration agreement and

15  concluded that California law required plaintiff to arbitrate his claims. In *Meyer*, the Second

16  Circuit found that Uber's registration process provided sufficient notice of Uber's Terms of

17  Service, including the arbitration agreement, by the screens displayed on the user's Android

18  device during registration. *Meyer*, 868 F.3d at 77-78. As the Second Circuit explained, when

19  plaintiff arrived at the payment screen, "[t]he entire screen [wa]s *visible at once*, and the user

20  d[id] not need to scroll beyond what [wa]s *immediately visible* to find the notice of the Terms of

21

22  _____

  [5] *See, e.g.*, *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1257 (10th Cir. 2012) (holding
  clickwrap assent enforceable in internet service contract where customers click on an "I

23  Acknowledge" button on the same web page that has a hyperlink to defendant's terms of service);
  *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 907-08 (N.D. Cal. 2011) (user agreed to

24  arbitration provision because she was told that "[b]y using YoVille, you also agree to the YoVille
  [blue hyperlink] Terms of Service" and the user proceeded); *Starke v. Gilt Groupe, Inc.*, No. 13

25  Civ. 5497(LLS), 2014 WL 1652225, at *1 (S.D.N.Y. Apr. 24, 2014); *Crawford v. Beachbody,*
  *LLC*, No. 14cv1583-GPC(KSC), 2014 WL 6606563, at *1 (S.D. Cal. Nov. 5, 2014); *5381*

26  *Partners LLC v. Shareasale.com, Inc.*, No. 12-CV-4263 (JFB)(AKT), 2013 WL 5328324, at *1
  (E.D.N.Y. Sept. 23, 2013); *Fteja*, 841 F. Supp. 2d at 831; 834-35; *Sherman v. AT&T Inc.*, No. 11

27  C 5857, 2012 WL 1021823, at *3 (N.D. Ill. Mar. 26, 2012); *Snap-on Bus. Sols. Inc. v. O'Neil &*
  *Assocs., Inc.*, 708 F. Supp. 2d 669, 673 (N.D. Ohio 2010); *Druyan v. Jagger*, 508 F. Supp. 2d 228,

28  232 (S.D.N.Y. 2007).

1    Service." *Id.* at p. 78 (emphasis added).  Moreover, the "dark print contrasts with the bright white

2    background, and the hyperlinks are in blue and underlined." *Id.* at 78.  The Second Circuit

3    therefore concluded that, under California law, "a reasonably prudent smartphone user would

4    have constructive notice of the terms." *Id.* at 79; *see also Meyer v. Kalanick*, 291 F. Supp. 3d 526,

5    533 (S.D.N.Y. 2018) ("[T]he Second Circuit concluded last August that the notice provided by

6    Uber [of the arbitration provision] was sufficient as a matter of law.") (citing *Meyer*, 868 F.3d at

7    76-80).

8         The same result is warranted here.  As in *Meyer*, Plaintiff here assented to the Terms and

9    Conditions, including the Arbitration Agreement, by affirmatively taking steps to create an Uber

10   account and then used the Uber App to request a ride.  (Narayanan Decl. ¶¶ 7(a)-(f); Tonti Decl.

11   ¶ 5); *see also Lainer v. Uber Techs., Inc.*, 2016 WL 7444925, at *4 (compelling to individual

12   arbitration the claims of an Uber rider based on a nearly identical arbitration provision).  Plaintiff

13   is therefore bound by the Terms and Conditions, including the Arbitration Agreement.[6]

14         **2.    Plaintiff's Claims Are Covered by the Arbitration Agreement.**

15         The FAA requires that courts compel arbitration "unless it may be said with *positive*

16   *assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted

17   dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (emphasis

18   added) (citation omitted).  Any doubts should be resolved in favor of coverage.  *Id.*

19         The Arbitration Agreement broadly defines the scope of arbitrable disputes, and includes

20   "any dispute, claim or controversy arising out of or relating to [the Terms and Conditions] or the

21   breach, termination, enforcement, interpretation or validity thereof or the use of the Services

22   (collectively, '*Disputes*') will be settled by binding arbitration between you and Uber."  (Tonti

23   Decl., Ex. A, at 8.)  The Arbitration Agreement's use of the "arising out of or relating to"

24   

25         [6] Any reliance by Plaintiff on the First Circuit's decision in *Cullinane v. Uber Techs., Inc.*,
     893 F.3d 53 (1st Cir. 2018) would be misplaced, as that decision applied Massachusetts contract
26   law to a different sign-up screen from a different application on a different operating system with
     different formatting.  *Id.* at 61.  Further, a court in this District has analyzed an iPhone registration
27   process nearly identical to the process in *Cullinane* under *California* law and held that "as a
     matter of law, that [plaintiff] was on notice of Uber's terms and conditions, and assented to them
28   in signing up for Uber."  *Cordas*, 228 F. 3d at 988-990; *see also Cullinane*, 893 F.3d at 56-59
     (describing the registration process).

                                                      14

1    language should be interpreted broadly.  *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th

2    Cir. 1999);  *Delgado v. Progress Fin. Co.*, No. 1:14-cv-00033-LJO-MJS, 2014 WL 1756282, at

3    *5 (E.D. Cal. May 1, 2014) ("The use of the 'relat[ing] to' language is a signal that the scope of

4    the agreement is broad under Ninth Circuit case law and encompasses claims beyond the four

5    corners of the contract."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827 SI, C 09-

6    05609 SI, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011).  In the face of this language,

7    "Plaintiff's claims need only 'touch matters' covered by the contract containing the arbitration

8    provision."  *Koyoc v. Progress Fin. Co.*, No. CV 13-09165-RSWL (AGRx), 2014 WL 1878903,

9    at *4 (C.D. Cal. May 9, 2014) (citation omitted).

10          Here, Plaintiff's claims not only "touch matters" covered by the Terms and Conditions,

11   they fall squarely within that agreement.  The "Uber code" text messages that Plaintiff allegedly

12   received are sent to Uber users to enable access to their accounts.  These messages are therefore

13   permitted under the Terms and Conditions, which specify, among other things, that "[b]y creating

14   an Account, you agree that the Services may send you informational text (SMS) messages as part

15   of the normal business operation of your use of the Services."  (Tonti Decl., Ex. A at 4.)  But even

16   crediting Plaintiff's conclusory allegation that the text messages were "solicitations", Uber's

17   Privacy Policy—which is expressly incorporated by reference into Uber's Terms of Conditions

18   (*Id.*, Ex. A at 2)— specifies that Uber "may use the information we collect about you to: . . .

19   [s]end you communications we think will be of interest to you, including information about

20   products, services, promotions, news, and events of Uber and other companies . . . ."  (*Id.*, Ex. B

21   at 4.)  Thus, regardless of what type of message plaintiff received, the Terms (including the

22   Privacy Policy) directly address the text messages at issue.

23          Courts have repeatedly held that where, as here, TCPA claims are intertwined with the

24   underlying contract, such claims fall within arbitration provisions that include broad "arising out

25   of or relating to" language.  *See Koyoc v. Progress Fin. Co.*, 2014 WL 1878903, at *6 (rejecting

26   plaintiff's argument that TCPA claim was independent from the contract because it necessarily

27   required contract interpretation to determine whether the claim was within scope); *Fisher v. Rent-*

28   *A-Ctr., Inc.*, No. 2:14-cv-00918-MCE-AC, 2014 WL 3729553, at *4-5 (E.D. Cal. July 24, 2014)

15

1  (compelling arbitration of TCPA claim based on communications regarding payments on

2  furniture rental contract); *Sherman v. RMH, LLC*, No. 13cv1986-WQH-WMc, 2014 WL 30318,

3  at *8-9 (S.D. Cal. Jan. 2, 2014) (compelling arbitration of TCPA claim based on telephone call

4  about status review of prior vehicle purchase through an installment sale contract).  A key issue in

5  this case is whether Plaintiff consented to receiving the text messages at issue (*see, e.g.*, Compl.

6  ¶ 25(d)), including through affirmatively agreeing to the Terms that expressly cover these text

7  messages.  *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017)

8  ("The district court correctly stated that prior express consent is a complete defense to Van

9  Patten's TCPA claim.")  Because Plaintiff's TCPA claims are intertwined with the underlying

10  contract and clearly "touch matters" that will need to be resolved by the arbitrator, the Arbitration

11  Agreement encompasses Plaintiff's TCPA claims.

12  ### 3.     The Arbitration Agreement Is Not Unconscionable.

13  Plaintiff cannot avoid the Arbitration Agreement he entered into with Uber by claiming

14  that the agreement is unconscionable.  "The party resisting arbitration bears the burden of proving

15  unconscionability."  *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th

16  223, 247 (2012).  "[P]rocedural and substantive unconscionability must *both* be present" to permit

17  a court "to refuse to enforce a contract."  *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910

18  (2015) (citation omitted).  Uber's Arbitration Agreement is consumer friendly and cost effective,

19  and Plaintiff cannot meet his burden.

20  The Arbitration Agreement is not procedurally unconscionable because (1) it is not

21  oppressive and (2) Plaintiff was not surprised by it.  *Pinnacle Museum*, 55 Cal. 4th at 246.

22  Plaintiff had a meaningful choice whether to accept the Terms and take advantage of the Uber

23  App—he could have easily declined those terms and used alternative means of booking a trip via

24  the Lyft App, taxi, and/or public transportation.  *See Belton v. Comcast Cable Holdings, LLC*,

25  151 Cal. App. 4th 1224, 1245 (2007) ("The availability of alternative sources from which to

26  obtain the desired service defeats any claim of oppression, because the consumer has a

27  meaningful choice.").

28  Nor did the provision "surprise" Plaintiff.  The Terms containing the Arbitration

16

Agreement were prominently called out and hyperlinked on the account sign-up page and were readily accessible to Plaintiff.  (Narayanan Decl. ¶ 7(c); *id.*, Ex. C.)  Uber "was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to [Plaintiff's] attention."  *Sanchez*, 61 Cal. 4th at 914.  Even so, the Arbitration Agreement is written in plain English and is conspicuously displayed under the large heading "ARBITRATION" (Tonti Decl., Ex. A at 8)—not "hidden within a prolix printed form."  *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1539 (2003); *see Serafin v. Balco Props. Ltd.*, 235 Cal. App. 4th 165, 179 (2015) ("any procedural unconscionability is 'limited'" where arbitration provision is highlighted (citation omitted)); *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1321 (2005) ("a clear heading in a contract may refute a claim of surprise"). Under this "ARBITRATION" heading, the Terms and Conditions clearly state in bold:  "**You agree that any dispute, claim or controversy arising out of or relating to [the Terms and Conditions] or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services (collectively '*Disputes*') will be settled by binding arbitration between you and Uber**."  (Tonti Decl., Ex. A at 8 (emphasis added).)

The Arbitration Agreement is also not substantively unconscionable.  To prove substantive unconscionability, Plaintiff must show that the arbitration clause is "so one-sided as to shock the conscience."  *Pinnacle Museum*, 55 Cal. 4th at 246 (internal quotation marks and citation omitted).  Far from being one-sided, the Arbitration Agreement is bilateral and safeguards Plaintiff's ability to pursue a small claims action or an individual arbitration.  Uber has agreed to pay all of Plaintiff's "filing, administrative and arbitrator fees" for arbitration of non-frivolous claims under $75,000.  (Tonti Decl., Ex. A at 10 ("FEES").)  And, Plaintiff is not faced with significant travel expenses because Uber has agreed to conduct the arbitration in Plaintiff's home county in Florida.  (*Id.* at 9 ("ARBITRATION LOCATION AND PROCEDURE").)  These provisions defeat any claimed unconscionability.  *See, e.g.*, *Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 933-34 (N.D. Cal. 2012) (rejecting unconscionability challenge even where arbitration provision required individuals to share in costs of arbitration, set the arbitration out-of-state, and lacked mutuality in the remedies available to the parties).

17

1    **E.    Plaintiff Must Arbitrate His Claims On An Individual Basis.**

2        By its express terms, the Arbitration Agreement does not permit class actions or class

3    arbitration.  (*See* Tonti Decl., Ex. A at 9.)  This class action waiver is enforceable under well-

4    established precedent from the United States Supreme Court, which recently emphasized that the

5    FAA preempts any attempts to invalidate such provisions under state law.  *See DIRECTV, Inc. v.*

6    *Imburgia*, 136 S. Ct. 463, 471 (2015) (holding that the FAA preempts attempt to invalidate

7    arbitration agreement with class action waiver under California law); *see also Epic Sys. Corp. v.*

8    *Lewis*, 138 S.Ct. 1612, 1622 (2018) ("[B]y attacking . . . the individualized nature of the

9    arbitration proceedings, the employees' argument seeks to interfere with one of arbitration's

10   fundamental attributes."); *Concepcion*, 563 U.S. at 352 (FAA preempts California's judicial rule

11   regarding the unconscionability of class arbitration waivers); *Johnmohammadi v. Bloomingdale's,*

12   *Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) ("Johnmohammadi can't argue that the class-action

13   waiver is unenforceable under California law."); *accord Iskanian v. CLS Transp. L.A., LLC*, 59

14   Cal. 4th 348, 359-60 (2014) (enforcing class waiver and finding California law to the contrary is

15   preempted by the FAA).

16       Accordingly, this Court should enforce the class action waiver and compel Plaintiff to

17   arbitrate his claims on an individual basis.

18   **F.    This Action Should Be Stayed Pending Completion of Plaintiff's**
              **Individual Arbitration.**
19

20       Courts are required to "rigorously enforce agreements to arbitrate."  *Dean Witter*

21   *Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  The FAA "mandates that district courts *shall*

22   direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been

23   signed." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991)

24   (emphasis in original).  Because Plaintiff must arbitrate his claims or pursue them in small claims

25   court, this action should be stayed pending any further proceedings pursuant to the FAA.  *See* 9

26   U.S.C. §§ 3, 9-11; *Amirhamzeh v. Wells Fargo Bank, N.A.*, No. 14-cv-02123-VC, 2014 WL

27   12610227, at *2 (N.D. Cal. Oct. 31, 2014) (staying case after concluding that the plaintiff must be

28   compelled to arbitrate her claims); *Lainer v. Uber Techs., Inc.*, 2016 WL 7444925, at *4 (granting

18

1    Uber's motion to compel and staying the action pending arbitration of plaintiff's claims).

2    **IV.    CONCLUSION**

3        The Court should order Plaintiff to arbitrate all of his claims against Uber and stay

4    Plaintiff's claims pending the outcome of arbitration.

5

6    Dated: July 27, 2018                    TIFFANY CHEUNG
                                             LUCIA X. ROIBAL
7                                            MORRISON & FOERSTER LLP

8

9                                   By:    */s/ Tiffany Cheung*
                                           TIFFANY CHEUNG
10

11                                         Attorneys for Defendant
                                           UBER TECHNOLOGIES, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

sf-3920098