David S. Ratner, Esq.
David Ratner Law Firm, LLP
david@davidratnerlawfirm.com
33 Julianne Court
Walnut Creek, CA 94595
Telephone: (917) 900-2868
Fax: (925) 891-3818
*Attorney for Plaintiffs and the Classes*

[Additional counsel appearing on signature page]

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LUCIUS MANNING** and **WANDA ROGERS**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**UBER TECHNOLOGIES, INC.**, a Delaware corporation,<br><br>*Defendant.* | Case No. 4:18-cv-02931-HSG<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Lucius Manning ("Manning") and Plaintiff Wanda Rogers ("Rogers") bring this class action under the Telephone Consumer Protection Act against Uber Technologies, Inc. ("Uber" or "Defendant"), to stop its practice of sending unauthorized and unwanted text messages, and to obtain redress for all persons similarly injured by its conduct. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1. This case challenges Defendant Uber's practice of sending unsolicited text messages to consumers throughout the country that have never had any relationship with Uber – *i.e.*, the general public.

2. Uber's unsolicited texts violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, and caused both Plaintiffs and putative members of the Classes to suffer actual harm, including the aggravation, nuisance, loss of time, and invasions of privacy that result from the receipt of such text messages, lost value of cellular services paid for, and a loss of the use and enjoyment of their phones, including wear and tear to their phones' data, memory, software, hardware, and battery components, among other harms. The text messages are also sent regardless of whether a consumer has their cell phone number registered on the National Do Not Call Registry.

3. Accordingly, Plaintiffs seek an injunction requiring Uber to cease sending unsolicited text messages to the general public, *i.e.*, consumers throughout the country that are not Uber customers, as well as an award of actual and/or statutory damages and costs.

## PARTIES

4. Plaintiff Lucius Manning is an Alabama resident that has never had any relationship with Uber.

5. Plaintiff Wanda Rogers is a California resident that has never had any relationship with Uber.

6. Defendant Uber Technologies, Inc. is a Delaware corporation headquartered in San Francisco, California.

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

FIRST AMENDED CLASS ACTION COMPLAINT
-2-

8. The Court has personal jurisdiction over Defendant and venue is proper in this District because Uber's unauthorized texts giving rise to Plaintiffs' claims arose and emanated from this District, and because Uber maintains its primary place of business in this District.

## FACTUAL ALLEGATIONS

9. Uber is a multinational company that connects consumers in need of transportation with transportation providers (i.e., Uber drivers) for a fee.

10. In order to drum up business, Uber sends unsolicited text messages to consumers that have never had any relationship with Uber.

## PLAINTIFF MANNING

11. Plaintiff Manning has never had any relationship with Uber.

12. Additionally, on January 26, 2016, Manning registered his cell phone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing phone calls and text messages.

13. Notwithstanding, on April 29, 2018 at 12:33 pm, Uber sent Manning a text message from telephone number (909) 341-1745 to his cellular telephone number without his consent. Manning immediately responded, triggering an automated response directing him to http://help.uber.com, or to the Uber cell phone app:



14. In response Manning immediately replied "Stop," and Uber sent an automated

FIRST AMENDED CLASS ACTION COMPLAINT
-3-

1  response purportedly confirming that "SMS from Uber is now disabled. To re-enable, reply
2  START."
3      15.    Despite Manning's stop request, on May 1, 2018 at 4:35 pm a few days later, he
4  received another automated text message from Defendant using phone number (909) 341-1745.
5  The text stated: "Your Uber code: 9453[.]" Manning again immediately responsed "Stop" and



again received Uber's automated response stating, "SMS from Uber is now disabled. To re-enable, reply START."

16.    However, on May 9, 2018 at 6:36 am, Manning received more three more unsolicited text messages from Defendant using phone number (909) 341-1745, notifying him that *his* "Uber code" was "3537":



17.    The texts sent by, or on behalf of Uber are all solicitations. Each text message Manning received makes reference to the Uber brand name and requires Manning to inquire further into Uber's services to attempt to understand why he has been texted. In addition, Manning was directed to http://help.uber.com, as seen above. On this page, Uber solicits the general public to sign up for Uber accounts and ride in Ubers.

FIRST AMENDED CLASS ACTION COMPLAINT
-4-

18.   Uber's unsolicited texts were a nuisance that aggravated Manning, wasted his time, invaded his privacy, diminished the value of the cellular services he paid for, caused him to temporarily lose the use and enjoyment of his phone, and caused wear and tear to his phone's data, memory, software, hardware, and battery components.

**PLAINTIFF ROGERS**

19.   Plaintiff Rogers has never had any relationship with Uber.

20.   Additionally, on June 5, 2009, Rogers registered her cell phone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing phone calls and text messages.

21.   Notwithstanding, on June 7, 2018 at 8:11 am, after Manning filed the initial complaint in this action, Uber sent Rogers a text message from telephone number (520) 729-4342 to her cellular telephone number without her consent stating, "Uber code: 5155".

22.   On June 12, 2018 at 2:13 am Rogers received a second text message from Uber, again from telephone number (520) 729-4342 to her cellular telephone number stating, "3469 is your Uber code." Rogers replied back at 3:30 AM on June 12, 2018 with "Stop", triggering an automated response, "SMS from Uber is now disabled. To re-enable, reply START."

23.   Despite the stop request, Rogers received another unsolicited, unwanted text message from Uber on July 9, 2018 at 6:39 am from (520) 729-4342 stating, "7145 is your Uber code." Rogers then received another text message from Uber on July 9, 2018 from (520) 729-4342 stating, "Your Uber code: 9534".

24.   Plaintiff Rogers received additional unsolicited text messages to her cellular phone from Uber using phone number (520) 729-4342:

- July 10, 2018 at 8:05 am – "Your Uber code is 4918"
- July 11, 2018 at 7:05 am – "Uber code: 6036"

---

[1] https://help.uber.com

25.     Immediately after receiving the July 11, 2018 text message, Rogers again replied "Stop", which again triggered the automated response, "SMS from Uber is now disabled. To re-enable, reply START."

26.     Despite the second stop request, Rogers received 3 more unwanted text messages from Uber using phone number (520) 729-4342:

- July 14, 2018 at 10:39 am – "Uber code: 8642"
- July 14, 2018 at 12:40 pm – "Your Uber code: 7778"
- July 15, 2018 at 5:41 am – "Your Uber code is 2696"

27.     Rogers sent a reply back to (520) 729-4342 immediately after receiving the July 15 text message stating, "Stop", triggering an automated response, "SMS from Uber is now disabled. To re-enable, reply START."

28.     Again, as with the previous stop requests, Plaintiff Rogers received 2 more unsolicited, unwanted text messages from Uber using phone number (520) 729-4342 on July 16, 2018, both times at 11:34 am and both indicating that *her* Uber code is 9902. Rogers replied back "Stop" on July 16, 2018 at 9:33 pm, triggering an automated response, "SMS from Uber is now disabled. To re-enable, reply START." Within seconds of receiving confirmation that the text messages were disabled, Rogers received yet another unsolicited, unwanted text message from Uber using telephone number (520) 729-4342 stating, "3706 is your Uber code."

29.     Despite her numerous attempts to stop the text messages, Rogers received the following additional, unsolicited, unwanted text messages from Uber using phone number (520) 729-4342:

- July 18, 2018 at 2:33 am – "9134 is your Uber code."
- July 18, 2018 at 6:42 am – "Your Uber code: 8705"
- July 18, 2018 at 9:15 am – "Uber code: 4157"
- July 18, 2018 at 1:59 pm – "Uber code: 4788"
- July 21, 2018 at 11:06 pm – "8762 is your Uber code."

- July 22, 2018 at 2:51 am – "0502 is your Uber code."

30. On July 22, 2018 at 5:02 am, Rogers replied back "Stop", triggering an automated response, "SMS from Uber is now disabled. To re-enable, reply START."

31. On July 22, 2018 at 9:43 pm, Rogers received another unsolicited, unwanted text from Uber using phone number (520) 729-4342 stating, "Your Uber code is 1376" to which she immediately replied "Stop", triggering an automated response, "SMS from Uber is now disabled. To re-enable, reply START."

32. On July 23, 2018 at 1:25 am, Rogers received another unsolicited, unwanted text from Uber using phone number (520) 729-4342 stating, "3385 is your Uber code." Then, at 8:35 am on the same day, she received a text message from Uber stating, "1177 is your Uber code."

33. At 10:43 am on July 23, 2018 Rogers replied back "Stop", triggering an automated response, "SMS from Uber is now disabled. To re-enable, reply START." However, at 12:39 am, on July 24, 2018 Rogers received another text message from Defendant using phone number (520) 729-4342 stating, "4781 is your Uber code." Rogers replied back at 7:06 am on July 24, 2018 with "Stop", triggering an automated response, "SMS from Uber is now disabled. To re-enable, reply START."

34. Uber's unsolicited text messages were a nuisance that aggravated Rogers, wasted her time, invaded her privacy, diminished the value of the cellular services she paid for, caused her to temporarily lose the use and enjoyment of her phone, and caused wear and tear to her phone's data, memory, software, hardware, and battery components. The aggravation was made worse by the fact that Rogers was seemingly unable to get the text messages to stop, despite multiple stop requests that Uber's automated system acknowledged, but failed to act upon.

35. On information and belief, Uber, or a third-party acting on its behalf, has sent substantively identical unsolicited text messages *en masse* to the cellular telephone numbers of other consumers nationwide that have never had any relationship with Uber and/or that have expressly told Uber to stop texting. In fact, consumer complaints about Uber's unsolicited text

messages abound:

- "Uber code. Never used uber. Never requested."[2]
- "Said it was an Uber code which I DO NOT HAVE!!! It was a text message"[3]
- "Also received a confirmation code at random"[4]
- "Even when I replied "STOP" and got a message saying I would get no more messages five minutes later and I'll receive a text with a new Uber code."[5]

36. To the extent the text messages were sent on Uber's behalf to consumers, Uber authorized use of its trade name, otherwise controlled the content of the messages, and knew of, but failed to stop, the sending of the text messages in violation of the TCPA.

37. In sending the unsolicited text messages at issue, Uber, or a third party acting on its behalf, utilized an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator. This is evident from the circumstances surrounding the text messages, including the ability to trigger automated responses by replying with various code-words, their autogenerated and generic content, that substantively identical texts were sent to multiple recipients, and that they were sent from a telephone number associated with a landline or VOIP, which is consistent with the use of an automatic telephone dialing system to send text messages.[6]

---

[2] https://800notes.com/Phone.aspx/1-909-341-1745

[3] http://www.whosphoneis.info/phone/909-341-1745

[4] https://whocallsme.com/Phone-Number.aspx/9093411745

[5] http://spyoncaller.net/9093411745

[6] Who Calld, https://whocalld.com/+19093411745 (last accessed May 16, 2018).

FIRST AMENDED CLASS ACTION COMPLAINT
-8-

## Class Allegations

38.     Accordingly, Plaintiff Manning and Plaintiff Rogers bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seek certification of the following Classes:

**Autodialed No Consent Class:** All persons in the United States who (1) on or after four years prior to the filing of the initial complaint in this action; (2) were sent a text message by or on behalf of Uber; (3) using an automatic telephone dialing system; and (4) from whom Uber (a) does not allege to have consent, or (b) alleges to have obtained consent in the same manner it alleges to have obtained consent from both Plaintiffs.

**Autodialed Stop Class**: All persons in the United States who (1) on or after four years prior to the filing of the initial complaint in this action; (2) were sent a text message by or on behalf of Uber; (3) using an automatic telephone dialing system; (4) after the person informed Defendant that s/he no longer wished to receive phone calls from Defendant.

**Do Not Call Registry Class:** All persons in the United States who (1) on or after four years prior to the filing of the initial complaint in this action; (2) were sent more than one text message by or on behalf of Uber; (3) for the purpose of selling Defendant's products and services; (4) within any 12-month period starting after his or her cellular phone number had been listed on the National Do Not Call Registry for at least thirty days; and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call the Plaintiffs, or (b) they did not obtain prior express written consent.

39.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the definitions following appropriate discovery.

40. **Numerosity**: The exact size of the Classes is unknown and unavailable to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant sent unsolicited text messages to tens of thousands of individuals who fall into the class definitions. Class membership can be easily determined from Defendant's records.

41. **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Classes. Both Plaintiffs are members of the Classes, and if Defendant violated the TCPA with respect to the Plaintiffs, then it violated the TCPA with respect to the general public who comprise the members of the Classes. Plaintiffs and the Classes sustained the same damages as a result of Defendant's uniform wrongful conduct.

42. **Commonality and Predominance**: There are many questions of law and fact common to the claims of both Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   a) How Defendant gathered, compiled, or obtained the cellular telephone numbers of both Plaintiffs and the Classes;

   b) Whether the text messages were sent using an automatic telephone dialing system;

   c) Whether Defendant's text messages were sent for the purpose of marketing Defendant's services;

   d) Whether Defendant sent the text messages without the consent of Plaintiffs and the Classes;

   e) Whether Defendant sent text messages after Plaintiffs and members of the Autodialed Stop Class requested that Defendant stop sending text messages; and

   f) Whether Defendant's conduct was willful and knowing such that Plaintiffs and the Classes are entitled to treble damages.

43. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Neither Plaintiff has interests antagonistic to those of the Classes, and Defendant has no defenses unique to either Plaintiff.

44. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes, and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's practices challenged herein apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to the Plaintiffs.

45. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**

**Violation of 47 U.S.C. § 227**

**(On Behalf of Plaintiff Manning, Plaintiff Rogers, and the Autodialed No Consent Class)**

46. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 45 of this complaint and incorporate them by reference.

47. Defendant and/or its agents agent transmitted text messages to cellular telephone numbers belonging to both Plaintiffs and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

48. These text messages were sent without the consent of both Plaintiffs and the other members of the Autodialed No Consent Class.

49. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii), and as a result, under 47 U.S.C. § 227(b)(3)(B), Plaintiff Manning, Plaintiff Rogers, and the Autodialed No Consent Class are entitled to a minimum of $500.00 in damages for each violation. In the event that the Court determines that Defendant's conduct was wilful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the members of the Autodialed No Consent Class.

**SECOND CAUSE OF ACTION**

**Violation of 47 U.S.C. § 227**

**(On Behalf of Plaintiff Manning, Plaintiff Rogers, and the Autodialed Stop Class)**

50. Plaintiffs repeat and reallege the paragraphs 1 through 45 of this Complaint and incorporate them by reference.

51. Defendant placed unsolicited and unwanted autodialed phone calls to Plaintiffs and the other members of the Autodialed Stop Class on their cellular telephones after they had informed Defendant to stop calling them.

52. Defendant placed the unwanted phone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

53. Defendant placed these calls using an autodialer even after both Plaintiffs and other members of the Autodialed Stop Class requested that Defendant stop texting them.

54. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(B), and as a result, under 47 U.S.C. § 227(b)(3)(B), Plaintiff Manning, Plaintiff Rogers, and the Autodialed Stop Class are entitled to a minimum of $500.00 in damages for each violation.  In the event that the Court determines that Defendant's conduct was wilful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the members of the Autodialed Stop Class.

## THIRD CAUSE OF ACTION

**(Violation of 47 U.S.C. § 227)**

**(On Behalf of Plaintiff Manning, Plaintiff Rogers, and the Do Not Call Registry Class)**

55. Plaintiffs repeats and reallege paragraphs 1 through 45 of this Complaint and incorporate them by reference.

56. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

57. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

58. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[7]

59. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

60. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as both Plaintiffs and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

61. Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have an accurate written policy of dealing with do not call requests, by failing to accurately inform or train its personnel engaged in telemarketing regarding the existence and/or use of any do not call list, and by failing to internally record and honor do not call requests.

Defendant, therefore, violated 47 U.S.C. § 227(c)(5) because Plaintiff Manning, Plaintiff Rogers and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiffs and the Do Not Call Registry Class are entitled to a minimum of $500.00 in damages for each violation.  In the event that the Court determines that Defendant's conduct was wilful and knowing, it may, under 47 U.S.C. §

---

[7] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the members of the Do Not Call Registry Class.

## FOURTH CAUSE OF ACTION

**(Violation of California's *Business & Professions Code* §§ 17200, *et seq.* (the "UCL"))**

**(On Behalf of Plaintiff Manning, Plaintiff Rogers, and the Classes)**

62. Plaintiffs repeats and reallege paragraphs 1 through 45 of this Complaint and incorporate them by reference.

63. The UCL defines unfair business competition to include any "unlawful" act or practice. *Business & Professions Code* § 17200.

64. A business practice is "unlawful" under the UCL if it violates any other law or regulation.

65. Defendant has engaged in unfair business competition and violated the UCL through its violations of the TCPA and its implementing regulations directed towards Plaintiffs and the general public.

66. Plaintiffs and the general public have been injured by Uber's violations of the UCL.

67. The pervasiveness of Defendant's UCL violations, the absence of a relationship between Defendant and the consumers it targets with its texts, and the fact the Defendant's UCL violations have continued after the filing of this action, including towards new Plaintiff Rogers, demonstrate that there is an ongoing threat of future injury to the general public.

68. As such, Plaintiffs request that the Court enjoin Defendant from continuing to violate the UCL and/or from violating the UCL in the future. Otherwise, Plaintiffs and the general public may be irreparably harmed and/or denied an effective remedy.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Manning and Plaintiff Rogers, individually and on behalf of the Classes, pray for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing both Plaintiffs as the representatives of the Classes and their counsel as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and the UCL;

d) A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

e) An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the general public;

f) An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, recipients' consent to receive calls made with such equipment; and

g) Such further and other relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiffs request a trial by jury.

Dated: August 17, 2018.

> */s/ David S. Ratner*
> David S. Ratner, Esq.
> David Ratner Law Firm, LLP
> 33 Julianne Court
> Walnut Creek, CA 94595
> Telephone: (917) 900-2868
> Fax: (925) 891-3818
> Email: david@davidratnerlawfirm.com

FIRST AMENDED CLASS ACTION COMPLAINT
-16-

<table>
<tr><td>1</td><td></td></tr>
<tr><td>2</td><td>Avi R. Kaufman<br>Kaufman P.A.<br>400 NW 26th Street<br>Miami, Florida 33127<br>Telephone: (305) 469-5881<br>Email: kaufman@kaufmanpa.com</td></tr>
</table>

Avi R. Kaufman
Kaufman P.A.
400 NW 26th Street
Miami, Florida 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

Stefan Coleman
Law Offices of Stefan Coleman, P.A.
201 South Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
Fax: (888) 498-8946
Email: law@stefancoleman.com

*Counsel for Plaintiff Manning, Plaintiff Rogers, and all others similarly situated*

FIRST AMENDED CLASS ACTION COMPLAINT
-17-