Daniel C. Girard (State Bar No. 114826)
Angelica M. Ornelas (State Bar No. 285929)
Simon S. Grille (State Bar No. 294914)
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4800
dgirard@girardsharp.com
aornelas@girardsharp.com
sgrille@girardsharp.com

Steven L. Woodrow (*pro hac vice*)
Patrick H. Peluso (*pro hac vice*)
Taylor Smith (*pro hac vice*)
WOODROW & PELUSO, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809
swoodrow@woodrowpeluso.com
ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com

Avi R. Kaufman (*pro hac vice*)
KAUFMAN P.A.
400 NW 26th Street
Miami, Florida 33127
Telephone: (305) 469-5881
kaufman@kaufmanpa.com

*Interim Lead Plaintiffs' Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE UBER TEXT MESSAGING | Case No. 4:18-cv-02931-HSG<br><br>**PLAINTIFFS' SUR-REPLY TO DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF CHRISTOPHER ZIERS AND TO STAY THE ACTION**<br><br>Judge:         Hon. Haywood S. Gilliam, Jr.<br>Action Filed:   October 4, 2018<br>Hearing Date: March 14, 2019<br>Time:          1:00 p.m.<br>Courtroom:    2 |

**REDACTED - FILED UNDER SEAL**

## I. INTRODUCTION AND SUMMARY

After discovery on the question of formation, Uber still has not shown that Plaintiff Chris Ziers registered for Uber or agreed to be bound by its terms and conditions. As this Court noted in its Order permitting this sur-reply (Dkt. No. 86), Uber attached six new pages of documents[1] with its reply on its motion to compel arbitration. According to Uber, the documents are printouts of electronic records that supposedly reflect Mr. Ziers's registration with Uber, submission of payment information, and ordering and cancelling of a ride. As permitted by Judge Corley's Order (Dkt. No. 84), Plaintiffs deposed Uber's declarant, Naveen Narayanan, on February 20, 2019. The night before the deposition, Uber produced two *additional* pages of new documents.[2] Uber claims that these documents are printouts of electronic records memorializing the steps of Mr. Ziers's registration. None of these documents establish formation of an agreement to arbitrate.

First, neither of the two batches of late-produced documents is admissible, because Mr. Narayanan was unable to authenticate them under Federal Rule of Evidence 901. He instead admitted that he has no knowledge of the process by which the information reproduced in these documents was created, acquired, or maintained or whether it had even been preserved without alteration. Absent any basis in the record for these foundational facts, Uber's productions are inadmissible.

Second, even if these documents could be admitted into evidence, they do not show that Mr. Ziers entered into an agreement to arbitrate his claims against Uber. The documents that Uber claims reflect Mr. Ziers' registration show the last four digits of a debit card number submitted to cover payment. But Mr. Ziers *denies ever having that debit card number*, and consequently could not have completed the purported registration. Uber therefore cannot link Mr. Ziers to its service, much less demonstrate that he agreed to be bound by its terms and conditions.

Thus, because Uber has not met its burden of showing contract formation, its motion must be denied.

---

[1] UBER0000001-06, attached as Exhibit A to the Declaration of Simon S. Grille ("Grille Decl.")
[2] UBER0000007-08, attached as Exhibit B to the Grille Decl.

1

PLAINTIFFS' SUR-REPLY TO DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF CHRISTOPHER ZIERS AND TO STAY THE ACTION
CASE NO. 4:18-CV-02931-HSG

## II. RELEVANT BACKGROUND

On October 4, 2018, Plaintiffs provided Uber with Mr. Ziers's cell phone number, to allow Uber to investigate whether he ever registered for Uber's services. Grille Decl. ¶ 2. On October 23 Uber informed Plaintiffs that it had located no evidence that Mr. Ziers ever assented to Uber's arbitration agreement. *Id*., ¶ 3. On November 13, however, Uber reversed its position, claiming that Mr. Ziers agreed to arbitrate his claims. *Id*. ¶ 4. In response to Plaintiffs' request for evidence of such an agreement, Uber on December 4 provided the Declaration of Naveen Narayanan. *Id*. ¶¶ 4-5; Dkt. No. 64-2. Plaintiffs asked Uber to explain why it had not included Mr. Ziers in the arbitration motion Uber filed on November 1 (Dkt. No. 57), and also requested that Uber produce Mr. Narayanan for a deposition. Grille Decl. ¶¶ 6-7. Uber gave no explanation for the delay and refused to produce Mr. Narayanan. *Id*.

On December 17, 2018, Uber moved to compel Mr. Ziers's claims to arbitration. Dkt. No. 64. In support of its motion Uber submitted two employee declarations and asserted, for the first time, that Mr. Ziers had ordered and then canceled an Uber ride. *Id*. Mr. Ziers disputed these assertions of fact and noticed the deposition of Mr. Narayanan. Dkt. No. 71; Grille Decl. ¶ 8. Uber again refused to produce Mr. Narayanan and, despite repeated requests, refused to produce any of the records Mr. Narayanan purportedly reviewed to inform his declaration. *Id*. ¶¶ 8-9. On January 3, 2019, Uber moved for a protective order to prevent the deposition. Dkt. No. 68. On February 4, Uber filed its reply in support of its motion to compel Mr. Ziers's claims to arbitration, submitting six new pages of documents. Dkt. No. 82; Grille Decl. ¶ 10 & Ex. A. Plaintiffs objected to this new evidence (Dkt. No. 85), and the Court on February 13 permitted Plaintiffs to file this sur-reply. Dkt. No. 86.

Judge Corley denied Uber's motion for a protective order on February 6. Dkt. No. 84. Plaintiffs deposed Mr. Narayanan on February 20. Grille Decl. ¶ 12. Without explanation, at around 7:11 p.m. the night before Mr. Narayanan's deposition, Uber produced two more new pages of documents. Grille Decl. ¶ 11 & Ex. B.

## III. ARGUMENT

Despite multiple opportunities to present evidence of an agreement with Mr. Ziers, Uber has failed to do so. Uber's tardy productions are no substitute for competent evidence of assent. It is clear

2

PLAINTIFFS' SUR-REPLY TO DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO COMPEL
ARBITRATION AS TO PLAINTIFF CHRISTOPHER ZIERS AND TO STAY THE ACTION
CASE NO. 4:18-CV-02931-HSG

by now that, lacking evidentiary support for its motion, Uber has not met its burden. As a result, its motion to compel arbitration should be denied.

        **A.**       **There Is No Admissible Evidence That Mr. Ziers Agreed to Arbitrate with Uber.**

Uber misstates its burden in moving to compel arbitration as needing to make out a "prima facie case" for contract formation. *See* MTC Reply, Dkt. No. 82 at 3-4, 7 ("Nothing more is required."). To the contrary, Uber's burden requires it to demonstrate "no genuine issue of fact concerning the formation of the agreement." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (citation omitted). Uber has not made that showing.

        **i.**       **Uber's New Documents Are Inadmissible**

To establish an agreement to arbitrate, Uber must submit admissible evidence. *See Alarcon v. Vital Recovery Servs., Inc.*, 706 F. App'x 394, 395 (9th Cir. 2017) (reversing an order compelling arbitration when "there was no admissible evidence of an agreement to arbitrate between the parties"). Uber claims that each of its late-produced documents is a printout of computerized data. These types of documents, "however, raise unique issues concerning accuracy and authenticity." Federal Judicial Center, Manual for Complex Litigation § 11.447 at p. 82 (4th ed. 2004) ("*Manual 4th*"). And these issues are especially salient here given that Plaintiff disputes the accuracy of Uber's documents. For example, the partial payment card information shown on UBER0000001—which, according to Uber, is information Mr. Ziers provided when he registered with Uber—is *not* a payment card number that Mr. Ziers has any record or memory of owning or using. *See* Declaration of Christopher Ziers, ¶ 2 ("Ziers Decl.").[3] Because these electronic records have not been authenticated, they are inadmissible and hence insufficient to carry Uber's burden. *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 541-44 (D. Md. 2007) (holding that "[i]n order for ESI to be admissible, it also must be shown to be authentic" and recognizing the substantial risk of "[i]naccurate results" from "bad or incomplete data inputting" or

---

[3] Mr. Ziers's declaration does not reference the specific card number in UBER0000001 because Uber produced this document on the condition that Plaintiffs' counsel not share "any part of the payment card number with Mr. Ziers." Grille Decl. ¶ 13. In imposing this condition, Uber explained that its concern was that Mr. Ziers might see information relating to a payment card that does not belong to him (*id.*)—a tacit admission of Uber's own doubt as to the accuracy of its records.

1 | "when defective software programs are used or stored-data media become corrupted or damaged.")
2 | (citation omitted); *Manual 4th* § 11.447 at p. 82 (noting that "[t]he proponent of computerized evidence
3 | has the burden of laying a proper foundation by establishing its accuracy.").
4 |      As an initial matter, Uber's counsel lacks personal knowledge regarding these documents—
5 | which are not self-authenticating—and therefore cannot authenticate them.  *See* Order Denying Motion
6 | for Protective Order, Dkt. No. 84 (citing *Orr v. Bank of America*, 285 F.3d 764, 774, 777 (9th Cir.
7 | 2002)).  Moreover, Mr. Narayanan, who claims to be familiar with Uber's registration records, *see* Dkt.
8 | No. 64-2 ¶ 5, could not authenticate these documents under oath.
9 |      To authenticate electronic records under Rule 901(b)(1), a sponsoring witness must "provide
10 | factual specificity about the process by which the electronically stored information is created, acquired,
11 | maintained, and preserved without alteration or change, or the process by which it is produced if the
12 | result of a system or process that does so, as opposed to boilerplate, conclusory statements that simply
13 | parrot the elements of the business record exception to the hearsay rule." *Lorraine*, 241 F.R.D. at 545-
14 | 46.  Mr. Narayanan did not and could not provide this required testimony.  He testified [REDACTED]
15 | [REDACTED]. *See* Grille Decl. Ex.
16 | B (Deposition of Naveen Narayanan ("Narayanan Dep.")) at 77:21-78:6, 106:23-107:9, 114:18-23,
17 | 121:16-17, 123:20-23.  Mr. Narayanan further admitted that he [REDACTED]
18 | [REDACTED]
19 | [REDACTED]. *Id.* at 60:24-61:17.  Mr. Narayanan also testified that he [REDACTED]
20 | [REDACTED]
21 | [REDACTED].
22 | *Id.* at 32:1-9, 49:4-13, 51:7-10, 125:14-126:15 ("[REDACTED]
23 | [REDACTED]").  Nor could
24 | Mr. Narayanan describe [REDACTED]
25 | [REDACTED]
26 | [REDACTED]
27 | [REDACTED]—none of which he could rule out. *Id*. at 81:16-82:17, 108:18-109:18, 116:4-117:4,
28 | 125:14-126:15; *cf. In re Vee Vinhnee*, 336 B.R. 437, 445 (B.A.P. 9th Cir. 2005) ("How access to the

pertinent database is controlled and, separately, how access to the specific program is controlled are important questions. How changes in the database are logged or recorded, as well as the structure and implementation of backup systems and audit procedures for assuring the continuing integrity of the database, are pertinent to the question of whether records have been changed since their creation.").

Mr. Narayanan was thus unable to confirm that the information appearing on UBER0000001-08 accurately reflects information from Uber's electronic database, relating to Mr. Ziers or otherwise, or that this database has been properly maintained and preserved without alteration. Mr. Narayanan's testimony is plainly insufficient to authenticate these documents, and as a result they should not figure in the Court's analysis. *See, e.g.*, *Lorraine*, 241 F.R.D. at 557-59; *United States v. Baker*, 538 F.3d 324, 332-33 (5th Cir. 2008) (holding computer records inadmissible because the sponsoring witness lacked personal knowledge of how the electronic report was prepared or its chain of custody); *Alarcon v. Vital Recovery Servs., Inc.*, 706 F. App'x at 394 (reversing order compelling arbitration, as the declaration supporting the motion was "both insufficient and inadmissible."); *Webb v. Midland Credit Mgmt., Inc.*, No. 11 C 5111, 2012 WL 2022013, at *3-5 (N.D. Ill. May 31, 2012) (where defendants' key evidence was inadmissible, their "motion to compel arbitration must be denied.").[4]

### ii. The New Documents Do Not Establish That Mr. Ziers Agreed to Uber's Terms.

Even if any or all of Uber's untimely production were admissible, none of these documents demonstrates that Mr. Ziers agreed to Uber's terms. The documents that purportedly reflect Mr. Ziers' registration show the last four digits of a debit card number submitted for payment purposes. But Mr. Ziers attests that he has no memory or record of a debit card ending in those numbers ever belonging to him. Ziers Decl. ¶ 2. Uber cannot offer any evidence tying Mr. Ziers's personal information (such as name or billing address) to the debit card number and cannot explain how he joined Uber with a

---

[4] The lack of any admissible evidence of contract formation also requires rejection of Uber's argument that an arbitrator rather than this Court should decide the issue of formation. *Compare* Reply at 2, *with First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995) (holding that "because the Kaplans did not clearly agree to submit the question of arbitrability to arbitration, the Court of Appeals was correct in finding that the arbitrability of the Kaplan/First Options dispute was subject to independent review by the courts.").

5

PLAINTIFFS' SUR-REPLY TO DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF CHRISTOPHER ZIERS AND TO STAY THE ACTION
CASE NO. 4:18-CV-02931-HSG

payment card he never owned.  Uber therefore cannot show that Mr. Ziers completed its registration process and agreed to be bound by its terms and conditions.

Even apart from the inclusion of a debit card number unconnected to Mr. Ziers, none of the excerpts produced by Uber even shows Mr. Ziers's name.  Uber cannot dispute that it collects users' names when they register, and it is similarly unclear how Uber could process payment with only a partial debit card number.  The only remaining data on these documents—Mr. Ziers's email address and phone number—are details that Mr. Ziers does not dispute providing to Uber.  That Mr. Ziers may have submitted an email address to Uber does not establish that he completed Uber's registration process.  In fact, Mr. Ziers's emails indicate that he submitted his email address and phone number to obtain more information about Uber's services, and Uber also collects data from several sources beyond its registration process.  Uber Privacy Statement, Dkt. No. 64-1, Ex. B at 18, 20 (describing Uber's practice of collecting information from any "interactions and communications" and from "other sources" such as a "separate app or website" or from "your employer").  Therefore, for purposes of this motion, Uber's possession of Mr. Ziers's email address and phone number has no bearing on whether Mr. Ziers agreed to Uber's arbitration clause.

The manner in which Uber produced these excerpts further undermines its contentions.  Before reversing its position in early November, Uber admitted it had no evidence of Mr. Ziers ever agreeing to Uber's arbitration clause.  Dkt. No. 76-1 ¶¶ 3-4.  Uber has had Mr. Ziers's phone number since October 4, and Mr. Narayanan testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Grille Decl. Ex. C (Narayanan Dep.) at 61:18-62:3.  In addition, Uber based its motion on records purportedly reviewed by Mr. Narayanan, *see* Dkt. No. 64-2 ¶ 5, yet Uber did not produce any of those records until after Plaintiffs filed their opposition.  Moreover, although Mr. Narayanan claimed that those records indicate Mr. Ziers created an account by entering credit card information, *see id.* ¶ 7(e), Mr. Narayanan did not attach any of the records to his declaration.  And even more surprisingly, those were not the documents Uber submitted with its reply brief.  At his deposition, Mr. Narayanan admitted that the first time he had ever seen UBER0000001-06—Exhibits G-I of the Hunt Declaration— was on ▮▮▮▮▮▮▮▮▮▮▮▮, more than two months after he executed his declaration.  *See* Grille Decl. Ex. C (Narayanan Dep.) at 94:2-13, 101:14-20, 113:21-114:6.  In other words, Mr. Narayanan not only

1  could not *authenticate* UBER0000001-06—he also could not have *relied* on these documents in forming
2  the opinions expressed in his declaration.
3       The only records that Mr. Narayanan claims to have reviewed before signing his declaration are
4  purportedly contained in the documents Uber produced the night before his deposition: UBER0000007-
5  08. Mr. Narayanan testified that he ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* at 122:6-12. He said he
7  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* at 36:9-
8  37:7, 94:8-13; 130:6-8. Specifically, the legal department provided Mr. Narayanan with ▓▓▓▓
9  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[6] *Id.*
10 According to Mr. Narayanan, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* at 143:9-22. But this logic is circular. Mr.
12 Narayanan cannot explain why he associates the UUID with Ziers other than simply relying on
13 information provided to him by Uber's legal department. If the (unauthenticated) records supposedly
14 reproduced in UBER0000007-08 actually contained information specific to Mr. Ziers, such as his name
15 or phone number, that could suggest Uber may be appropriately attributing this UUID to Mr. Ziers. But
16 UBER0000007-08 *do not include Mr. Ziers's name, phone number or email address. Id.* at 144:13-21.
17 As a result, there is no basis to associate any of the information on these pages with Mr. Ziers.
18      The only other evidence Uber offers are blank screenshots that could apply to any consumer.
19 *See* 1/16/19 Hr'g Tr. at 5:15-18, Dkt. No. 75 (Judge Corley observed that Uber's "screenshots are blank.
20 They're not specific to [Mr. Ziers] . . . . [Uber] can submit that for any consumer."). Mr. Narayanan
21 admitted that he ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
22 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[5] A ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Grille Decl. Ex. C (Narayanan Dep.) at 18:20-25.

[6] Adding to the doubt surrounding these records is the fact that Mr. Narayanan ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Grille Decl. Ex. C (Narayanan Dep.) at 39:2-7.

7

PLAINTIFFS' SUR-REPLY TO DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO COMPEL
ARBITRATION AS TO PLAINTIFF CHRISTOPHER ZIERS AND TO STAY THE ACTION
CASE NO. 4:18-CV-02931-HSG

███████. Grille Decl. Ex. C (Narayanan Dep.) at 66:2-24.  Nor has Mr. Narayanan ever ████████████████████████████████████████████████████████.  *Id.* at 81:2-17.

## IV.   CONCLUSION

The documents in Uber's belated production are unauthenticated and inadmissible.  Even if they were admissible, they do not show Mr. Ziers entered into an agreement with Uber.  The Court should accordingly deny Uber's motion to compel arbitration.  Alternatively, the Court should set a trial on the question of formation.

Dated: February 27, 2019

Respectfully submitted,

By:     /s/ *Simon S. Grille*
Daniel C. Girard (State Bar No. 114826)
Angelica M. Ornelas (State Bar No. 285929)
Simon S. Grille (State Bar No. 294914)
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4800
dgirard@girardsharp.com
aornelas@ girardsharp.com
sgrille@girardsharp.com

Avi R. Kaufman (*pro hac vice*)
Kaufman P.A.
400 NW 26th Street
Miami, Florida 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

Steven L. Woodrow (*pro hac vice*)
swoodrow@woodrowpeluso.com
Patrick H. Peluso (*pro hac vice*)
ppeluso@woodrowpeluso.com
Taylor Smith (*pro hac vice*)
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Interim Lead Plaintiffs' Counsel*

PLAINTIFFS' SUR-REPLY TO DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF CHRISTOPHER ZIERS AND TO STAY THE ACTION
CASE NO. 4:18-CV-02931-HSG

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2019, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system. I also caused a copy of the foregoing under seal documents to be served *via electronic mail* on counsel of record for defendants.

/s/ Simon S. Grille