UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE UBER TEXT MESSAGING | Case No. 18-cv-02931-HSG<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY THE ACTION; DENYING AS MOOT MOTION TO STAY PENDING DECISION**<br><br>Re: Dkt. Nos. 56, 64 |

Plaintiffs Wanda Rogers and Christopher Ziers brought this putative class action against Defendant Uber Technologies, Inc. ("Uber"), alleging that it violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, when it sent them unsolicited text messages. *See* Consolidated Class Action Complaint ("Compl."), Dkt. No. 46. Uber moved to compel Ziers to arbitrate his TCPA claims, contending that he agreed to arbitrate all disputes when he signed up for Uber, and to stay the action pending that arbitration. *See* Dkt. No. 64 ("Mot."). Ziers maintains that he never registered for Uber and therefore never agreed to arbitration. The Court finds that there is a genuine factual dispute as to whether Ziers and Uber formed an agreement and thus **DENIES** Uber's motion to compel arbitration and stay the action.[1]

**I.   BACKGROUND**

The Court begins with a summary of the shifting factual record before turning to its analysis of Uber's motion.

//

---

[1] Uber also moved to stay the action pending a decision on its motion to compel. *See* Dkt. No. 56. Because the motion to compel has now been decided, the Court **DENIES AS MOOT** the motion to stay.

### A. Plaintiffs' Allegations

Lucius Manning originally brought this putative class action against Uber in May 2018, claiming that it sent him unauthorized and unwanted text messages. *See* Dkt. No. 1. Manning's case was eventually consolidated with two other similar cases, Dkt. No. 43; Manning and two of the other original plaintiffs voluntarily dismissed their claims, Dkt. No. 58, leaving only Rogers and Ziers as Plaintiffs.

Rogers alleged that she "has never used the Uber app and has never driven for Uber." Compl. ¶ 13. Nevertheless, she claimed that Uber sent numerous unsolicited text messages to her cell phone, even after she asked Uber to stop. *See id.* ¶¶ 14–27. Ziers alleged that he "has never used the Uber app and has never driven for Uber" but that Uber sent him numerous unsolicited text messages, even after he attempted to opt out. *See id.* ¶¶ 41–46.

Plaintiffs asserted that Uber's actions violated the TCPA (entitling them to statutory damages of $500 per violation), *see id.* ¶¶ 74–86, as well as California's Unfair Competition Law, *id.* ¶¶ 87–95. Plaintiffs brought their claims on behalf of two putative nationwide classes: the "Autodialed No Consent Class" and the "Replied Stop Class." *Id.* ¶ 65.

### B. Uber Moves to Compel Arbitration

On December 17, 2018, Uber moved to compel Ziers to arbitrate his claims, arguing that he was contractually obligated to do so. *See* Mot. at 1. In addition, Uber asked the Court to stay the entire action to "conserve judicial resources, avoid inconsistent outcomes, and to inform the Court's subsequent disposition" of the claims. *Id.* at 2.

Uber proffered that its records showed that Ziers registered for an Uber account on June 23, 2016, using a smartphone with an Android operating system. *See id.* at 3. According to Uber, because Ziers completed the Uber registration process, he necessarily agreed to Uber's terms and conditions. *Id.* at 2–4. The terms and conditions in force at the time required arbitration of all disputes and prohibited class actions:

> You agree that any dispute, claim or controversy arising out of or relating to the Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services (collectively "Disputes") will be settled by binding arbitration between you and Uber, except that each party retains the right to bring

> an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights. You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class in any purported class action or representative proceeding. Further, unless both you and Uber otherwise agree in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding.

*See* Dkt. No. 64-1 Ex. A at 9. Uber said that the same day Ziers created his Uber account, he "requested a ride, which he subsequently cancelled." Mot. at 5.

Uber supported these factual assertions with declarations from two employees: a paralegal named Dylan Tonti and a software engineer named Naveen Narayanan. *See* Dkt. Nos. 64-1 ("Tonti Decl."), 64-2 ("Narayanan Decl."). Tonti stated that Ziers registered for Uber on June 23, provided copies of the then-existing Uber terms and conditions, and explained that Uber's records showed that Ziers ordered and cancelled a ride on June 23. *See* Tonti Decl. ¶¶ 3–5. Narayanan said that he reviewed Uber's records and discovered that Ziers registered for Uber on June 23 using an Android phone. *See* Narayanan Decl. ¶¶ 5–6.

About two weeks after filing its motion, Uber moved for a protective order to preclude Plaintiffs from deposing Narayanan. *See* Dkt. No. 68.

### C. Plaintiffs Respond in Opposition

On January 11, 2019, Plaintiffs filed an opposition, contending that Uber could not meet its burden to prove that Ziers agreed to arbitrate all potential claims against Uber. *See* Dkt. No. 71 ("Opp.") at 4.

In a declaration attached to the Opposition, Ziers averred that he did not recall completing the Uber registration process or ordering and cancelling a ride in June 2016. *See* Dkt. No. 71-3 ("Ziers Decl.") ¶¶ 2–3. Ziers said that he did not receive an Uber account creation confirmation email, but he attached as exhibits two other emails that he had received from Uber. *Id.* ¶¶ 4–8. The first email was dated May 4, 2016; it encouraged Ziers to complete his account. *See* Dkt. No. 71-4. The second email, dated June 23, said "Welcome to Uber!" and directed Ziers to download the Uber app. *See* Dkt. No. 71-5. Ziers did not believe he provided his payment card information

3

to Uber and did not find any entries from Uber in his billing statements. *See* Ziers Decl. ¶¶ 9, 11. Finally, Ziers stated that he "could not have signed up for Uber in 2016 using [his] Android phone" because the phone he owned at the time "did not allow [him] to download third party apps." *Id.* ¶ 10.

### D. Uber Replies and Introduces New Evidence

Uber replied on February 4, contending that Ziers "cannot avoid his arbitration agreement by attempting to manufacture a factual dispute . . . based only on his inability to recall registering for an Uber account." *See* Dkt. No. 82 ("Reply") at 1.

In support of its reply, "Uber voluntarily produced information from its records that supports Mr. Narayanan's declaration." *Id.* at 7. Uber asserted that the three exhibits it attached proved that Ziers registered for Uber on June 23; that he requested and canceled a ride near Hopatcong, New Jersey; and that he provided his payment card number to Uber. *See id.* at 7–8. Though Uber believed it was "unnecessary" to provide these records, it did so in what it viewed as "an effort to efficiently resolve" the motion. *Id.* This newly produced information consisted of six documents containing entries from Uber's database. *See* Dkt. No. 82-1 (declaration of Uber attorney identifying exhibits).[2] The first exhibit, Bates numbered UBER0000002, contained a string of numbers and letters labeled "user_uuid," the date June 23, and Ziers's phone number and email address:

| user_uuid | signup_date | signup_mobile | signup_email |
|---|---|---|---|
| e0471e97-5cd5-4326-a452-6403145735be | 6/23/2016 | ▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓ |

*See* Reply Ex. G.[3] The second exhibit consisted of four documents, Bates numbered UBER0000003 to UBER000006, with 13 entries spread across 24 fields:

| trip_uuid | client_uuid | city_name | vehicle_view_name |
|---|---|---|---|
| 48fa0087-48c6-47e9-a8b4-361967caf9bc | e0471e97-5cd5-4326-a452-6403145735be | New Jersey | uberX |

| status | driver_uuid | driver_firstname | driver_lastname | request_at_local | request_lat | request_lng |
|---|---|---|---|---|---|---|
| rider_canceled | | | | 6/23/2016 16:54 | 41.1512331 | -74.3357701 |

---

[2] Uber also attached six declarations in support of motions to compel arbitration in other cases. *See* Dkt. Nos. 82-2 to 82-7.

[3] Following the Court's order granting in part and denying in part the administrative motions to file under seal, Dkt. No. 102, the parties filed public versions of these documents, which are located at Dkt. Nos. 105, 106. The Court has reproduced the exhibits (rather than merely summarize them) to make the basis for its analysis clear.

```
pickup_at_local   begintrip_lat   begintrip_lng   dropoff_at_local   dropoff_lat   dropoff_lng   destination_string

driver_rating   rider_rating   actual_client_fare_usd   actual_client_fare_local   card_type   card_number
                                                    0                           0  Visa
```

*See* Reply Ex. H. The third exhibit, Bates numbered UBER0000001, contained information about a debit card:

```
client_uuid                              card_bin   card_number   card_expires_at   card_type   billing_zip   card_category   card_issuing_bank            issuing_country_iso2
e0471e97-5cd5-4326-a452-6403145735be                                                Visa        7843          DEBIT           JPMorgan Chase Bank N.A. - Debit  US
```

*See* Reply Ex. I.

### E. Plaintiffs Object and the Court Grants Leave to File a Sur-Reply

On February 6, Magistrate Judge Corley denied Uber's motion for a protective order to prohibit Plaintiff from taking Narayanan's deposition. *See* Dkt. No. 84. Judge Corley found that Narayanan was "a key witness to the genuine dispute as to whether Mr. Ziers registered an account with Uber and agreed to its arbitration agreement" and therefore must be made available for a deposition by February 21. *See id.* at 1. Judge Corley noted that "Uber seems to think that if an Uber attorney or Uber employee says something an opposing party and the court must accept the statement as true." *Id.* at 3.

The next day, Plaintiffs objected, under Civil Local Rule 7-3(d)(1), to the new evidence Uber had provided in support of its Reply. *See* Dkt. No. 85. The Court granted leave for Plaintiffs to file a sur-reply to "avoid the unfairness inherent in this eleventh-hour revelation of what appears to be consequential new information." *See* Dkt. No. 86 at 2–3.

Plaintiffs submitted their sur-reply on February 27, along with a new declaration from Ziers and excerpts from Narayanan's deposition. *See* Dkt. No. 90 ("Sur-Reply"). Ziers attested that he did not have a payment card matching the one listed on UBER0000001. *See id.* at 3.[4]

---

[4] The declaration was actually not this simple, because Uber did not allow Ziers to see the contents of UBER0000001. According to Ziers's counsel, Uber "was concerned that Mr. Ziers may be exposed to credit card information that does not belong to him." *See* Declaration of Simon S. Grille ("Grille Decl."), Dkt. No. 90-1 ¶ 13. Instead of reviewing the document himself, Ziers submitted a sealed declaration in which he listed the last four digits and expiration dates of the two payment cards that he had "any record or memory of ever using or owning." *See* Dkt. Nos. 89-6 (sealed version), 90-5 (redacted version). Based on its review of the sealed documents, the Court concludes that neither of the four-digit card endings provided by Ziers matches the one listed on UBER0000001.

5

Plaintiffs also attached excerpts of Narayanan's deposition and noted that Uber had produced two additional documents, UBER0000007–08, the night before the deposition. *See id.* at 1. Narayanan testified that "analytics events" were mapped to a user's "UUID." Dkt. No. 89-12 ("Narayanan Dep.") at 18. Prior to running the queries in Uber's database that led to the creation of the new documents, Narayanan requested Ziers's UUID from Uber's legal team. *See id.* at 36–39. With respect to Uber's database, Narayanan testified that he did not know where the data was maintained, who maintained the data, who could modify the data, or if he would be able to tell if anyone modified any of the data. *Id.* at 32, 51, 60, 61, 109. He explained that he had never seen the generic screenshots of the user agreement populated with Ziers's name or unique information. *Id.* at 66.

Narayanan had not seen the documents labeled UBER0000001–06 until February 15, when he was preparing for his deposition. *Id.* at 94, 101, 113–14. He did not know what any of the information in UBER0000001 meant except for the UUID. *Id.* at 107–08. Narayanan did not create UBER0000002 or know who did. *Id.* at 75–78. He did not rely on the information from UBER0000003–06 for his declaration and did not know what database the information came from. *Id.* at 113–14. Narayanan testified that based on his review of the data, there "was an event that showed [Ziers] tried to request a ride." *Id.* at 122. Narayanan did not create UBER0000007–08, but he had seen the same information in the Uber database. *Id.* at 122–23.

### F. The Court Denies Uber's Motion for a Supplemental Declaration and Holds a Hearing on the Motion to Compel

On March 7, Uber moved for leave to file a supplemental declaration in response to Plaintiffs' Sur-Reply "in order to provide a more accurate and complete record" because it believed that the deposition excerpts contained in Plaintiffs' Sur-Reply "omitted the most relevant portions." *See* Dkt. No. 93. The Court denied the motion, noting that if Uber had "been more forthright in the first place, neither this motion nor Plaintiffs' sur-reply would have been necessary." *See* Dkt. No. 97.

The Court held a hearing on the motion to compel arbitration and stay the action on March 14, after which it took the motion under submission. *See* Dkt. No. 98 (minute entry).

## II. LEGAL STANDARDS

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes that a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (noting federal policy favoring arbitration). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing 9 U.S.C. § 2).

When the parties contest whether an agreement was formed, the court applies "general state-law principles of contract interpretation," without a presumption in favor of arbitrability. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (internal quotation omitted).  The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that there was an agreement to arbitrate. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).  Conversely, the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences.  *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).  Therefore, a court may find that an agreement to arbitrate exists as a matter of law "[o]nly when there is no genuine issue of fact

concerning the formation of the agreement." *Id.* (internal quotation omitted); *see also Alarcon v. Vital Recovery Servs., Inc.*, 706 F. App'x 394, 394 (9th Cir. 2017) (same).

### B. Motion to Stay

District courts have discretion under Section 3 of the FAA to either stay or dismiss claims that are subject to an arbitration agreement. *See Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009); *see also Moses H. Cone*, 460 U.S. at 20 n. 23 (noting that "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration," but that the "decision is one left to the district court . . . as a matter of its discretion to control its docket"). The "preference" of the Ninth Circuit is to "stay[ ] an action pending arbitration rather than dismissing it." *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014).

## III. DISCUSSION

Uber moved to compel Ziers to arbitrate his TCPA claims, as it contends was required by the terms and conditions to which Ziers agreed when he completed the Uber registration process. *See* Mot. at 1. The Court will proceed in three steps: first, it will review the admissibility of the proffered evidence; second, it will determine whether it or an arbitrator should adjudicate Ziers's challenge to contract formation; and third, it will decide whether Uber has proven that an agreement was formed.

### A. The Documents Uber Produced in Its Reply Are Not Authenticated

As the Court previously noted, "Uber inexplicably" waited until its Reply brief to produce what it viewed as key documents. *See* Dkt. No. 86 at 2. According to Uber, these documents—Bates numbered UBER0000001 to UBER0000006—show that Ziers registered for Uber, requested and canceled a ride, and provided Uber with his payment card information. *See* Reply at 7–8. Plaintiffs add that Uber produced two additional documents—Bates numbered UBER0000007 and UBER0000008—the night before Plaintiffs deposed Narayanan. *See* Sur-Reply at 1. Plaintiffs contend that all of these documents are inadmissible because they have not been authenticated. *See* Sur-Reply at 3.

The existence of an agreement to arbitrate must be supported by admissible evidence. *See*

8

*Alarcon*, 706 F. App'x at 395. And evidence must be authenticated to be admissible. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To satisfy the authentication requirement, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Federal Rules of Evidence provide examples of how evidence may be authenticated, and one method of authentication is testimony of a witness with knowledge that the "item is what it is claimed to be." Fed. R. Evid. 901(b)(1).

Uber introduced the documents Bates numbered UBER0000001–06 in its Reply, supported by the declaration of its counsel. *See* Dkt. No. 82-1. Uber did not explain why it withheld these documents until its Reply (other than to suggest it "was not required to voluntarily provide" them) or where the documents came from. *See* Reply at 7. Nor did Uber attach a declaration or statement from a person with knowledge explaining what the print-outs were or how they were created. Rather, Uber attached six declarations from different cases, in which Uber employees recounted the steps they took to determine whether plaintiffs in those cases agreed to arbitrate their claims. *See* Reply Exs. A–F. According to Uber, these declarations support granting its motion to compel because other courts have found that "declarations from Uber software engineers are more than sufficient to establish the existence of an agreement to arbitrate." Reply at 7. But these entirely irrelevant declarations do not establish the authenticity of the attached documents (or help Uber prove the existence of an agreement to arbitrate in this case). And counsel's declaration does not authenticate the documents either, because counsel merely identifies them as "true and correct" copies of the documents that were produced in discovery, rather than explaining what the documents were or how they were created. *See Orr*, 285 F.3d at 776–77 (holding that document was "not authenticated by having been produced in discovery").

Narayanan, an Uber employee who provided the declaration forming the basis for the initial motion to compel, does not appear to have the knowledge required to authenticate the Reply exhibits. Plaintiffs questioned Narayanan about these documents after defeating Uber's motion for a protective order to prevent his deposition. *See* Dkt. No. 84 at 3 (noting that "the records [produced by Uber] highlight the need for Mr. Narayanan's deposition"). Narayanan testified at his deposition that he had not seen the documents labeled UBER0000001–06 until he was

9

1  preparing for his deposition, weeks after they were filed. Narayanan Dep. at 94, 101, 113–14. He
2  displayed little familiarity with the Reply exhibits: he did not know what any of the information in
3  UBER0000001 meant except for the UUID, *id.* at 107–08; he did not create UBER0000002 or
4  know who did, *id.* at 75–78; and he did not rely on the information from UBER0000003–06 for
5  his declaration and did not know what database that information came from, *id.* at 113–14. The
6  excerpts of Narayanan's deposition provided by Plaintiffs demonstrate that he lacks the personal
7  knowledge needed to authenticate the six Uber Reply documents.

8  The Court finds that, based on the record before it, the documents labeled UBER0000001–
9  06 have not been authenticated. Snippets from a database, reproduced without any context,
10 explanation, or supporting testimony, are not properly authenticated evidence. However, because
11 the Court finds that, even if Uber had authenticated these documents, they would not dispel the
12 genuine dispute of material fact, the Court will continue to reference them in this order.[5]

### B. This Court—Not an Arbitrator—Must Determine Whether an Agreement Was Formed

15 Uber contends that Ziers's challenges to contract formation must be decided by an
16 arbitrator—rather than this Court—because the arbitration agreement delegates questions of
17 arbitrability to the arbitrator. *See* Reply at 2–3. This argument misunderstands the law.

18 Of course, the parties to an arbitration agreement may "agree to arbitrate 'gateway'
19 questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their
20 agreement covers a particular controversy," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69
21 (2010), so long as they do so "clearly and unmistakably," *Howsam v. Dean Witter Reynolds, Inc.*,
22 537 U.S. 79, 83 (2002) (internal quotation omitted). But because "arbitration is a matter of
23 contract," *Rent-A-Ctr.*, 561 U.S. at 67, "before referring a dispute to an arbitrator, the court
24 determines whether a valid arbitration agreement exists," *Henry Schein*, 139 S. Ct. at 530. Thus,
25 "challenges to the *existence* of a contract as a whole must be determined by the court prior to

---

[5] The Court need not determine whether the exhibits labeled UBER0000007–08 have been authenticated because they were added to the record in Plaintiffs' Sur-Reply and thus Uber does not rely upon them.

ordering arbitration." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007).

Uber is correct that Ziers "does not contest the enforceability of the delegation clause." Reply at 2. Rather, Ziers is challenging Uber's assertion that he entered into a contract in the first place. *See* Sur-Reply at 3. This threshold question—whether an agreement existed—is one properly for the Court, without reference to any delegation provision. *See Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) ("Although challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator, challenges to the very existence of the contract are, in general, properly directed to the court.") (internal citations omitted); *see also Three Valleys*, 925 F.2d at 1140–41 ("[B]ecause an arbitrator's jurisdiction is rooted in the agreement of the parties, a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate.") (internal citations and quotation marks omitted). Uber cites three district court cases to support its argument that the issue of whether an agreement existed falls within the delegation provision and thus must be decided by an arbitrator, not this Court. *See* Reply at 3. Although these cases provide Uber with helpful quotes, none of the cited decisions compelled arbitration without first finding that an agreement existed. *See Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662, at *1 (N.D. Cal. Mar. 18, 2016) (compelling arbitration after finding clear and unmistakable delegation of arbitrability where party signed contract); *DeVries v. Experian Info. Sols., Inc.*, No. 16-CV-02953-WHO, 2017 WL 733096, at *7 (N.D. Cal. Feb. 24, 2017) (holding that consumer accepted terms and conditions of arbitration agreement and leaving other threshold questions for arbitrator to decide under delegation clause); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 838 F. Supp. 2d 967, 973 (C.D. Cal. 2012) (denying motion to compel arbitration after determining court must decide challenges to arbitration clause). Moreover, Ninth Circuit precedent is clear: "challenges to the very existence of the contract are . . . properly directed to the court." *Kum Tat Ltd.*, 845 F.3d at 983. Accordingly, it is the Court's duty, not an arbitrator's, to determine whether an agreement was formed.

//

### C. There Is a Genuine Dispute of Fact As To Whether Ziers Entered Into a Contract With Uber

A "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The party moving to compel arbitration bears the burden of proving, by a preponderance of the evidence, that the parties agreed to arbitration. *Norcia*, 845 F.3d at 1283. "State contract law controls whether the parties have agreed to arbitrate." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). Under California law, "[a]n essential element of any contract is the consent of the parties, or mutual assent." *Donovan v. RRL Corp.*, 27 P.3d 702, 709 (Cal. 2001) (citing Cal. Civ. Code §§ 1550, 1565); *see also Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1212 (9th Cir. 2016) (noting that the "mutual intention to be bound by an agreement is the *sine qua non* of legally enforceable contracts and recognition of this requirement is nearly universal"). Mutual assent usually consists of an offer and acceptance. *Donovan*, 27 P.3d at 709.

Uber's motion to compel necessarily fails because there is a genuine dispute of material fact as to whether an agreement was formed. The Court will review the evidence in the same order in which it was introduced.

#### i. Uber's Uncontested Evidence

In its initial motion to compel, Uber attached the declarations of two employees. The first employee, Dylan Tonti, reviewed Uber's records and determined that Ziers registered for Uber on June 23, 2016, and "requested a trip" that same day. *See* Tonti Decl. ¶¶ 3–5. Tonti did not attach the records he reviewed or provide any further explanation of what they consisted of. The second employee, Naveen Narayanan, located Ziers in Uber's records and determined that Ziers registered for Uber on June 23, 2016, using "the Android version of the Uber App." Narayanan Decl. ¶ 5.[6]

Uber contends that its motion should be granted because "[c]ourts have repeatedly granted

---

[6] Uber has not provided any explanation for why it initially told Plaintiffs in October 2018 that its records showed that Ziers had not agreed to arbitration. *See* Grille Decl. ¶¶ 3–5.

motions to compel arbitration and enforced nearly identical versions of the arbitration provision at issue here based on declarations from Uber software engineers—including screenshots of the registration process—that are substantially similar to the declaration [that] Mr. Narayanan submitted in this case." Reply at 4. Uber lists several of these cases before contending that "[t]here is no reason that the Court should reach a different result here." *Id.*

But there is a reason: though Uber's original evidence may have been sufficient to compel arbitration, it is not the only evidence before the Court.

### ii. Ziers's Declaration Created a Genuine Dispute of Material Fact

Uber says Ziers signed up for its services and thereby agreed to arbitrate his claims; Ziers said he did not. The Court cannot resolve this dispute on a motion to compel. *See Three Valleys*, 925 F.2d at 1141.

To review, Ziers wrote in his declaration (submitted under penalty of perjury) that he did "not recall ever completing the Uber registration process." *See* Ziers Decl. ¶ 2.[7] Nor did Ziers "recall ever ordering an Uber ride and then cancelling it in June 2016." *Id.* ¶ 3. He did "not believe" that he provided his payment card information to Uber. *Id.* ¶ 11. Further, Ziers stated that he "could not have signed up for Uber in 2016 using [his] Android phone" because the phone he owned at the time "did not allow [him] to download third party apps." *Id.* ¶ 10.

Uber contends that Ziers was required to—and did not—"unequivocally deny" entering into an arbitration agreement. *See* Reply at 4–5. First, that is not the law. Uber cites to three Northern District of California cases to support its burden-shifting framework and requirement of an unequivocal denial. *See id.* The first case, *Blau v. AT & T Mobility*, relied upon an unpublished Second Circuit decision, which in turn applied New York and Utah law to determine that the party seeking to compel arbitration had not made a prima facie showing that an agreement to arbitrate existed. *See* No. C 11-00541-CRB, 2012 WL 10546, at *3 (N.D. Cal. Jan. 3, 2012)

---

[7] Obviously, a knowingly false statement that one "does not recall" doing something would constitute perjury, or a false declaration, or both. *See* 18 U.S.C. §§ 1621, 1623; *see also United States v. Seltzer*, 794 F.2d 1114, 1119 (6th Cir. 1986) (upholding conviction for perjury where defendant testified that he did not recall events); *United States v. Moeckly*, 769 F.2d 453, 465 (8th Cir. 1985) (upholding conviction for perjury where defendant testified that "he did not recall being in Florida" when other witnesses testified that he had been in Florida at time in question).

(citing *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)). The second case, *Perez v. Maid Brigade, Inc.*, used the phrase "unequivocally deny" without any citation. *See* No. C 07-3473 SI, 2007 WL 2990368, at *4 (N.D. Cal. Oct. 11, 2007). And the third case simply cited *Blau* for the unequivocal denial rule. *See Loewen v. Lyft, Inc.*, No. 15-CV-01159-EDL, 2015 WL 12780465, at *5 (N.D. Cal. June 12, 2015). This unequivocal denial requirement appears to have arisen in cases where the party attempting to avoid arbitration claimed to not recall agreeing to specific terms (rather than the agreement as a whole) or signing a contract. *See Blau*, 2012 WL 10546, at *3–4. In contrast, Ziers claims that he never entered into an agreement with Uber. Moreover, to the extent that this rule conflicts with the summary-judgment type procedure mandated by the controlling Ninth Circuit precedent of *Three Valleys*, the Court cannot apply it.

Second, even assuming that Uber is correct that Ziers was required to unequivocally deny entering an arbitration agreement, he has met that burden. Ziers claims that he does not remember signing up for Uber or ordering an Uber ride, and that he could not have downloaded the Uber app because his cell phone lacked the technological capability. It is hard to fathom what kind of denial could be more unequivocal than claiming impossibility. Nevertheless, Uber contends that Ziers's "self-serving declaration" saying that he did "not recall" completing the registration process does not constitute a denial and thus does not raise a genuine dispute of material fact. *See* Reply at 5. But, as Judge Corley previously observed when she denied Uber's motion for a protective order, the courts in the cases cited by Uber "held that the plaintiff's testimony that he or she did not recall signing the agreement was not sufficient to create a dispute warranting discovery" where "the defendant produced an arbitration agreement signed by the plaintiff." *See Manning v. Uber Techs. Inc.*, 358 F. Supp. 3d 962, 965 (N.D. Cal. 2019). For example, in *Sundquist v. Ubiquity, Inc.*, the court found there was no question of fact where the defendant produced contracts signed by plaintiffs, who had claimed that they did not recall the contracts containing an arbitration provision and asserted (without evidence) that the proffered contracts had been altered. *See* No. 3:16-CV-02472-H-DHB, 2017 WL 3721475, at *3 (S.D. Cal. Jan. 17, 2017). In contrast, Uber has not produced a signed contract or other proof of an agreement—just declarations from its employees and unauthenticated screenshots from its database.

Ziers has sworn that he does not recall signing up for Uber and that he was technologically incapable of doing so; Uber takes the opposite stance. Even though Ziers's declarations are self-serving (like most declarations), they contain detailed facts and supporting evidence (like his payment card information and phone capabilities) and thus are sufficient to create a genuine issue of material fact. *Cf. FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (finding that affidavit did not create genuine issue of fact where affiant "never offered any evidence to support [her] factual assertions"). Because Uber bears the burden of proving the existence of the agreement to arbitrate, and all inferences must be drawn in Ziers's favor, the Court cannot grant the motion to compel based on the present record. *See, e.g.*, *Berman v. Freedom Fin. Network, LLC*, No. 18-CV-01060-DMR, 2018 WL 2865561, at *4 (N.D. Cal. June 11, 2018) (denying motion to compel arbitration where movant "failed to show the absence of a genuine issue of fact").

### iii. The Reply Evidence Does Not Negate the Dispute of Fact

As previously discussed, Uber disclosed new information in its Reply that it contends proves that Ziers entered into an arbitration agreement. Though the Court excluded these newly produced documents as unauthenticated, the Court will briefly discuss why, even if considered, they do not erase the dispute of fact.

Uber asserts in its reply brief that because the documents labeled UBER0000001–06 contain Ziers's phone number and email address and say "rider_canceled," Ziers must have completed the registration process and therefore agreed to arbitration. *See* Reply at 7–8. But these conclusions are not supported by any testimony from a person knowledgeable about Uber's database or procedures. Rather, Uber provided what it says are snippets from its user database and asked the Court (and Plaintiffs) to accept its conclusion as to what this data signifies. Tellingly, the one person Uber has made available (only after losing a motion for a protective order) to answer fundamental questions about the source or meaning of this data could provide little insight. Narayanan's testimony showcased his unfamiliarity with Uber's database and revealed that he had not seen the documents labeled UBER0000001–06 until preparing for his deposition, after the documents had already been filed. And he explained that these documents were not the source of

15

his conclusion that Ziers registered for Uber—meaning that the source of that conclusion remains a mystery.

Drawing all inferences in favor of Plaintiffs, as the Court must do on the motion to compel, the Court cannot conclude that Ziers entered into an arbitration agreement. There are a number of other potential explanations for how Uber came to possess Ziers's information: Ziers may have partially completed the sign-up process or submitted his information to learn more about Uber, Uber may have collected his information from a third party, or Uber's database may contain errors.[8] Moreover, Ziers claimed (through his counsel, because Uber did not allow him to view the underlying documents) that the payment card number was not his. *See* Sur-Reply at 3. Even the documents Uber released the night before Narayanan's deposition do not show that Ziers completed the registration process—they do not contain Ziers's name and are linked to him only through a UUID, which was provided to Narayanan by Uber's counsel.

At bottom, Uber says its documents confirm that Ziers completed the registration process, while Ziers avers that he did not. This genuine dispute of fact over whether an agreement to arbitrate was formed requires the Court to **DENY** the motion to compel arbitration.

### iv. Uber May Renew Its Motion After Further Discovery

Though the Court denies Uber's motion to compel at this juncture, it does so without prejudice to its refiling. Uber may refile its motion after conducting additional discovery or may file a motion to conduct an evidentiary hearing or other proceeding under 9 U.S.C. § 4. *See Amaya v. Spark Energy Gas, LLC*, No. 15-CV-02326-JSW, 2016 WL 1410755, at *5 (N.D. Cal. Apr. 11, 2016) (denying motion to compel arbitration without prejudice).

### v. There Is No Basis to Stay the Action

Uber also moved to stay the entire action. *See* Mot. at 20. Because the Court denied the

---

[8] These examples of potential sources of Ziers's information are not just speculation conjured up to create a dispute of fact. Uber's own privacy policy acknowledges that Uber "may also receive information from other sources and combine that with information we collect through our Services." Dkt. No. 64-1 Ex. B at 3. More specifically, Uber acknowledges that it "may receive information about you or your connections" from payment providers, social media services, or separate apps or website using Uber's application programming interface. *Id.* In addition, Uber "may receive information about you from your employer" if the employer "uses one of our enterprise solutions." *Id.*

motion to compel arbitration, there is no basis to stay the case as to either Ziers or Rogers. Accordingly, Uber's motion to stay is **DENIED**.

Further, Uber moved to stay the action pending a decision on the motion to compel arbitration. *See* Dkt. No. 56. Because the motion to compel has now been decided, this motion to stay is **DENIED AS MOOT**.

## IV. CONCLUSION

Because there is a genuine dispute of fact as to whether Ziers and Uber entered into an arbitration agreement, the Court **DENIES** the motion to compel arbitration and stay the action. Rather than hold an evidentiary hearing at this time, the Court denies the motion without prejudice to its renewal following further discovery. In addition, the Court **DENIES AS MOOT** the motion to stay pending a decision. Finally, the Court **SETS** a further case management for Tuesday, July 30 at 2:00 p.m. in Courtroom 2, Fourth Floor, Oakland, CA to discuss a case schedule; a case management statement is due by July 23.

**IT IS SO ORDERED.**

Dated: 6/18/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge