Daniel C. Girard (State Bar No. 114826)
Angelica M. Ornelas (State Bar No. 285929)
Simon S. Grille (State Bar No. 294914)
GIRARD SHARP LLLP
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4800
dgirard@girardsharp.com
aornelas@ girardsharp.com
sgrille@girardsharp.com

Steven L. Woodrow (*pro hac vice*)
Patrick H. Peluso (*pro hac vice*)
Taylor Smith (*pro hac vice*)
WOODROW & PELUSO, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809
swoodrow@woodrowpeluso.com
ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com

Avi R. Kaufman (*pro hac vice*)
KAUFMAN P.A.
400 NW 26th Street
Miami, Florida 33127
Telephone: (305) 469-5881
kaufman@kaufmanpa.com

*Interim Lead Plaintiffs' Counsel*

[Additional counsel on signature page]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE UBER TEXT MESSAGING | Case No. 4:18-cv-02931-HSG<br><br>**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Wanda Rogers and Christopher Ziers ("Plaintiffs") bring this class action under the Telephone Consumer Protection Act against Uber Technologies, Inc. ("Uber" or "Defendant"), to stop its practice of sending unauthorized and unwanted text messages, and to obtain redress for all persons similarly injured by its conduct.

**SUMMARY OF THE ACTION**

1. This case challenges Defendant Uber's practice of sending unsolicited text messages to members of the general public who have never had any relationship with Uber.

2. Uber uses an automatic telephone dialing system ("ATDS") to send these text messages and to continue sending them after Plaintiffs and Class members asked Uber to "stop." Uber's unsolicited text messages violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and injured Plaintiffs and Class members by causing aggravation, loss of time, and invasions of privacy. The text messages also interfered with Plaintiffs' enjoyment of their phones by occupying their phones' memory and storage and degrading their phones' battery life.

3. Plaintiffs seek an injunction requiring Uber to cease sending unsolicited text messages to the general public, *i.e.*, consumers throughout the country that are not Uber customers, as well as an award of actual and/or statutory damages and costs.

**PARTIES**

4. Plaintiff Wanda Rogers is a California resident who has never had any relationship with Uber.

5. Plaintiff Christopher Ziers is a New Jersey resident who has never had any relationship with Uber.

6. Defendant Uber Technologies, Inc. is a Delaware corporation headquartered in San Francisco, California.

**JURISDICTION & VENUE**

7. This Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' claims under the TCPA, 47 U.S.C. § 227, *et seq*. This Court also has jurisdiction under the Class Action

1  Fairness Act ("CAFA"), 28 U.S.C. § 1332, because the alleged Class consists of over 100 persons,
2  there is minimal diversity, and the claims of the class members when aggregated together exceed $5
3  million. None of the exceptions to CAFA apply.

4      8.    The Court has personal jurisdiction over Defendant and venue is proper in this District
5  because Uber's unauthorized texts giving rise to Plaintiffs' claims arose and emanated from this
6  District and because Uber maintains its primary place of business in this District.

7      9.    The text messaging practices alleged herein were conceived, reviewed, approved, and
8  otherwise controlled from Defendant's headquarters in San Francisco, California. Uber made critical
9  decisions concerning its text messaging practices in California, and such decisions emanated from
10 California. The text messages, moreover, contain links to Defendant's website and refer to
11 Defendant's app, which are both developed in California.

## PLAINTIFF-SPECIFIC ALLEGATIONS

### Plaintiff Rogers

14     10.    Plaintiff Rogers has never used the Uber app and has never driven for Uber.

15     11.    Despite having no relationship with Uber, on June 7, 2018 at 8:11 a.m., Uber sent Ms.
16 Rogers a text message from telephone number (520) 729-4342 to her cellular telephone number
17 without her consent stating, "Uber code: 5155."

18     12.    On June 12, 2018 at 2:13 a.m. Ms. Rogers received a second text message from Uber,
19 again from telephone number (520) 729-4342 to her cellular telephone number stating, "3469 is your
20 Uber code." Ms. Rogers replied back at 3:30 AM on June 12, 2018 with "Stop," triggering an
21 automated response: "SMS from Uber is now disabled. To re-enable, reply START." Ms. Rogers
22 never replied "START."

23     13.    Despite the stop request, Ms. Rogers received another unsolicited text message from
24 Uber on July 9, 2018 at 6:39 a.m. from (520) 729-4342 stating, "7145 is your Uber code." Ms.
25 Rogers then received another text message from Uber on July 9, 2018 from (520) 729-4342 stating,
26 "Your Uber code: 9534."

14. Plaintiff Rogers received additional unsolicited text messages to her cellular phone from Uber using phone number (520) 729-4342:

- July 10, 2018 at 8:05 a.m. – "Your Uber code is 4918"
- July 11, 2018 at 7:05 a.m. – "Uber code: 6036"

15. Promptly after receiving the July 11, 2018 text message, Ms. Rogers again replied "Stop", which again triggered the automated response, "SMS from Uber is now disabled. To re-enable, reply START."

16. Despite the second stop request, Ms. Rogers received 3 more unwanted text messages from Uber using phone number (520) 729-4342:

- July 14, 2018 at 10:39 am – "Uber code: 8642"
- July 14, 2018 at 12:40 pm – "Your Uber code: 7778"
- July 15, 2018 at 5:41 am – "Your Uber code is 2696"

17. Ms. Rogers sent a reply back to (520) 729-4342 immediately after receiving the July 15 text message stating, "Stop", which once again triggered an automated response, "SMS from Uber is now disabled. To re-enable, reply START."

18. Again, as with the previous stop requests, Ms. Rogers received 2 more unsolicited text messages from Uber using phone number (520) 729-4342 on July 16, 2018, both times at 11:34 a.m. and both indicating that her Uber code is 9902. Ms. Rogers replied back "Stop" on July 16, 2018 at 9:33 p.m., triggering an automated response, "SMS from Uber is now disabled. To re-enable, reply START." Within seconds of receiving confirmation that the text messages were disabled, Ms. Rogers received yet another unsolicited text message from Uber using telephone number (520) 729-4342 stating, "3706 is your Uber code."

19. Despite her numerous attempts to stop the text messages, Ms. Rogers received the following additional, unsolicited text messages from Uber using phone number (520) 729-4342:

- July 18, 2018 at 2:33 a.m. – "9134 is your Uber code."
- July 18, 2018 at 6:42 a.m. – "Your Uber code: 8705"

- July 18, 2018 at 9:15 a.m. – "Uber code: 4157"
- July 18, 2018 at 1:59 p.m. – "Uber code: 4788"
- July 21, 2018 at 11:06 p.m. – "8762 is your Uber code."
- July 22, 2018 at 2:51 a.m. – "0502 is your Uber code."

20. On July 22, 2018 at 5:02 a.m., Ms. Rogers replied back "Stop", triggering an automated response, "SMS from Uber is now disabled. To re-enable, reply START."

21. On July 22, 2018 at 9:43 p.m., Ms. Rogers received another unsolicited text from Uber using phone number (520) 729-4342 stating, "Your Uber code is 1376" to which she immediately replied "Stop", triggering an automated response, "SMS from Uber is now disabled. To re-enable, reply START."

22. On July 23, 2018 at 1:25 a.m., Ms. Rogers received another unsolicited text from Uber using phone number (520) 729-4342 stating, "3385 is your Uber code." Then, at 8:35 a.m. on the same day, she received a text message from Uber stating, "1177 is your Uber code."

23. At 10:43 a.m. on July 23, 2018 Rogers replied back "Stop", triggering an automated response, "SMS from Uber is now disabled. To re-enable, reply START." However, at 12:39 a.m., on July 24, 2018 Ms. Rogers received another text message from Defendant using phone number (520) 729-4342 stating, "4781 is your Uber code." Ms. Rogers replied back at 7:06 a.m. on July 24, 2018 with "Stop", triggering an automated response, "SMS from Uber is now disabled. To re-enable, reply START."

24. Uber's unsolicited text messages were a nuisance that aggravated Ms. Rogers, wasted her time, and invaded her privacy. The text messages interfered with Ms. Rogers's use and enjoyment of her cell phone by occupying her phone's memory and storage and by consuming its battery life. The messages contributed to wear and tear of her phone's hardware and software components and resulted in loss of value by appropriating cellular minutes and data. The aggravation was made worse by the fact that Ms. Rogers was unable to get the text messages to stop despite multiple stop requests that Uber's automated system acknowledged but failed to honor or process.

-5-
FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 4:18-cv-02931-HSG

**Plaintiff Christopher Ziers**

25. Plaintiff Ziers has never used the Uber app and has never driven for Uber.

26. Despite having no relationship with Uber, Uber repeatedly sent text messages to Mr. Ziers's cellular phone. Mr. Ziers, for example, received text messages from the following numbers: (808) 419-7274, (617) 229-5264.

27. The unsolicited text messages Mr. Ziers received from these numbers all transmit an "Uber code" using different sentence structures and verbiage.

28. Plaintiff replied "STOP" and then received a text message that said "SMS from Uber is now disabled. To re-enable, reply START." Plaintiff never replied "START," but he nevertheless continued to receive text messages from Uber.

29. The below screenshots reflect some of these unsolicited messages and Mr. Ziers's responses:




30. Uber's unsolicited text messages were a nuisance that aggravated Mr. Ziers, wasted his time, and invaded his privacy. The text messages interfered with Mr. Ziers's use and enjoyment of

his cell phone by occupying his phone's memory and storage and by consuming its battery life. The messages contributed to wear and tear of his phone's hardware and software components and resulted in loss of value by appropriating cellular minutes and data. The aggravation was made worse by the fact that Mr. Ziers was unable to get the text messages to stop despite stop requests that Uber's automated system acknowledged but failed to honor or process.

## COMMON FACTUAL ALLEGATIONS

31. Uber or its agent owns the telephone numbers used to send the text messages described herein. Uber did not send these text messages for any emergency purpose.

32. Uber, or a third-party acting on its behalf, has sent substantively identical unsolicited text messages to the cellular telephone numbers of consumers nationwide that have never had any relationship with Uber and/or that have expressly told Uber to stop texting. In fact, consumer complaints about Uber's unsolicited text messages abound:

- "Uber code. Never used uber. Never requested."[1]
- "Said it was an Uber code which I DO NOT HAVE!!! It was a text message"[2]
- "Also received a confirmation code at random"[3]
- "Even when I replied "STOP" and got a message saying I would get no more messages five minutes later and I'll receive a text with a new Uber code."[4]

33. Uber authorized the use of its trade name, controlled the content of the messages, and knew of, but failed to stop, the transmission of these text messages.

34. In sending the unsolicited text messages at issue, Uber utilized its dialing system, which qualifies as an ATDS under the TCPA because it is hardware and/or software with the capacity to

---

[1] https://800notes.com/Phone.aspx/1-909-341-1745

[2] http://www.whosphoneis.info/phone/909-341-1745

[3] https://whocallsme.com/Phone-Number.aspx/9093411745

[4] http://spyoncaller.net/9093411745

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 4:18-cv-02931-HSG

1  store or produce cellular telephone numbers to be called, using a random or sequential number
2  generator.

3   35.   The use of an ATDS is evident from the circumstances surrounding the text messages,
4  including the ability to trigger automated responses by replying with various code-words (including
5  re-starting the messages) and the messages' autogenerated and generic content. That substantively
6  identical texts were sent to multiple recipients, and that they were sent from a telephone number
7  associated with a landline or VOIP, is also consistent with the use of an automatic telephone dialing
8  system to send text messages.[5]

9   36.   Uber continues to send unauthorized SMS messages to cellular subscribers who have
10 expressly "opted-out" or requested not to receive text messages by responding "STOP" or with
11 similar commands.

12  37.   Each text message sent to a cellular subscriber after the subscriber requested not to
13 receive text messages by responding "STOP" or with similar commands was sent knowingly or
14 willfully.

15  38.   Companies must provide an opt-out mechanism in their text messages and that—at
16 most—a single text may be sent after the consumer exercises his/her right to opt out confirming the
17 opt out. Notwithstanding this authority, Defendant fails to honor requests by consumers to opt-out or
18 unsubscribe to the SMS text messages. Defendant, therefore, knows or acts in conscious disregard of
19 the fact that its SMS text messages to these cellular subscribers are unauthorized.

**Class Allegations**

21  39.   Plaintiff brings this lawsuit under Federal Rules of Civil Procedure Rules 23(a), (b)(2),
22 and (b)(3) as a representative of the following classes:

> **Autodialed No Consent Class:** Each person in the United States who (1) on or after May 18, 2014; (2) received at least one non-emergency text message on his or her cellular phone; (3) from Defendant or a third party acting on behalf of Defendant; (4) which was sent using the same dialing system or systems used to send the text messages

---

[5] *E.g.*, https://whocalld.com/+19093411745 (last visited May 16, 2018).

sent to the named Plaintiffs in this case; and (5) for whom Defendant (a) has no record of prior express consent, or (b) claims it obtained prior express consent in the same manner as Defendant purports to have obtained prior express consent to send text messages to Plaintiffs.

**Replied Stop Class:** Each person in the United States who (1) on or after May 18, 2014; (2) received at least one non-emergency text message on his or her cellular telephone; (3) from Defendant or a third party acting on behalf of Defendant; (4) which was sent using the same dialing system or systems used to send the text messages sent to the named Plaintiffs in this case; and who (5) replied to the text message with the words "stop," "end," "cancel," or similar language; and (6) thereafter received at least one additional text message to the same cellular telephone number other than a single text message confirming the opt-out request.

40. Excluded from the Classes are Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, and the parties' counsel in this litigation. Members of the above-defined Classes can be identified through Defendant's records and other objective criteria. Plaintiffs reserve the right to amend the class definitions following an appropriate period of discovery.

41. **Numerosity**: The exact sizes of the Classes are unknown and unavailable to Plaintiffs at this time, but Plaintiffs believe there are (at least) thousands of class members. This allegation is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. This allegation is based, at least in part, on the following information: (1) other consumers have lodged complaints online about receiving the same unwanted text messages from Defendant, and (2) the purpose of automated dialers is to call or text message numerous persons in a short amount of time.

42. The alleged size and geographic dispersal of the Classes makes joinder of all Class members impossible and impractical.

43. **Typicality**: Plaintiffs' claims are typical of the claims of the Class members in that Plaintiffs, like all Class members, have been injured by Defendant's uniform misconduct directed toward the general public—(i) the use of an automatic telephone dialing system to send text messages without the receiving party's prior express consent to receive such messages, and (ii) the failure to honor "Stop" requests. Plaintiffs and Class members sustained the same types of damages

and harm as a result of Defendant's uniform wrongful conduct.

44. **Commonality and Predominance**: Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Class include:

    a)    Whether the text messages were sent using an automatic telephone dialing system;

    b)    Whether Defendant sent the text messages without the consent of Plaintiffs and Class members;

    c)    Whether Defendant sent text messages after Plaintiffs and Class members requested that Defendant cease sending text messages using "Stop" or similar commands;

    d)    Whether Defendant's conduct was knowing or willful;

    e)    Whether Plaintiffs and Class members were damaged by receiving Defendant's text messages, and the extent of those damages; and

    f)    Whether Defendant should be enjoined from engaging in such conduct in the future.

45. **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiffs do not have interests antagonistic to those of the Classes, and Defendant has no defenses unique to the named Plaintiffs.

46. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of Defendant's financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this complaint. Class-wide damages are essential to induce Defendant to comply with Federal law. Individualized litigation would significantly increase the delay and expense to all parties and to the Court and would create the potential for inconsistent and contradictory rulings. By contrast, a class

action presents fewer management difficulties, allows claims to be heard which would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

47. Class certification is also appropriate under Rule 23(b)(2) because Defendant has acted and refused to act on grounds that apply generally to the Classes such that final injunctive and/or declaratory relief is warranted with respect to the Classes as a whole.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On Behalf of Plaintiffs and the Autodialed No Consent Class)**

48. Plaintiffs incorporate the above allegations by reference.

49. Defendant and/or its agents transmitted text messages to cellular telephone numbers belonging to Plaintiffs and Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

50. The text messages were sent without the prior express consent of Plaintiffs and Class members.

51. Defendant, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii), and as a result, under 47 U.S.C. § 227(b)(3)(B), Plaintiffs and Class members are entitled to a minimum of $500.00 in damages for each violation. In the event that the Court determines that Defendant's conduct was willful or knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and Class members.

52. Plaintiffs and Class members are also entitled to and seek injunctive relief prohibiting future violations of the TCPA together with corresponding declaratory relief.

**SECOND CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiffs and the Replied Stop Class)**

53. Plaintiffs incorporate the above allegations by reference.

54. Defendant sent unsolicited text messages to cellular phones belonging to Plaintiffs and the members of the Replied Stop Class after the recipients of these text messages informed Defendant that they no longer wished to receive text messages from Defendant.

55. Defendant sent the text messages using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

56. The text messages to Plaintiffs and the Replied Stop Class were sent after any alleged consent had been expressly revoked by responding with an opt-out request, such as STOP, END, CANCEL, or similar language.

57. Defendant's opt-out mechanism does not work. Rather than restrict the re-transmission of text messages only to consumers who reply "Start" as indicated by Uber, Uber sends or causes to be sent Uber Code text messages to consumers who never replied "Start."

58. Defendant's supposed opt-out mechanism, moreover, is not cost free. It requires the transmission of data from the user's cell phone that results in a reduction of the user's allowable data.

59. Defendant, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's unlawful conduct, Plaintiffs and the other members of the Replied Stop Class are each entitled to a minimum of $500.00 in damages for each violation, together with appropriate injunctive and declaratory relief.

60. Defendant's conduct was knowing or willful. Defendant confirmed that it received the opt-out requests but nevertheless continued to text Plaintiffs and Replied Stop Class members. Thus, in the event that the Court determines that Defendant's conduct was willful or knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## THIRD CAUSE OF ACTION
### (Violation of California's Business & Professions Code §§ 17200, et seq. (the "UCL"))
### (On Behalf of Plaintiffs, the Autodialed No Consent Class, and the Replied Stop Class)

61. Plaintiffs incorporate the above allegations by reference.

62. The UCL proscribes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

63. A business practice is "unlawful" under the UCL if it violates any other law or regulation.

64. Defendant's text messaging business practices described above are unlawful because they violate the TCPA and its implementing regulations.

65. Plaintiffs and the general public have been injured by Uber's violations of the UCL, including through the aggravation and invasions of privacy that result from the receipt of the text messages. The text messages also interfered with Plaintiffs' and Class members' enjoyment of their phones by occupying their phones' memory and storage and degrading their phones' battery life.

66. The pervasiveness of Defendant's UCL violations, the absence of a relationship between Defendant and the consumers that receive its texts, and the fact the Defendant's UCL violations continued after the filing of the first complaint in this matter, demonstrate that there is an ongoing threat of future injury to the general public.

67. Defendant's conduct described throughout this Amended Class Action Complaint, including all major decisions, occurred in and emanated from California. There are no issues of state law that would interfere with application of California state law to a nationwide class or classes as described herein.

68. As such, Plaintiffs request that the Court enjoin Defendant from continuing to violate the UCL and from violating the UCL in the future. Otherwise, Plaintiffs and the general public may be irreparably harmed and denied an effective remedy.

69. Plaintiffs further seek reasonable attorneys' fees and costs under applicable law, including California Code of Civil Procedure section 1021.5.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

a) An order certifying this case as a class action on behalf of the Classes defined above, and appointing Plaintiffs as the representatives of the Classes and their counsel as Class Counsel;

b) An injunction, together with appropriate declaratory relief, requiring Defendant to cease all unsolicited text messaging activity described herein, and to otherwise protect the interests of the general public;

c) An injunction, together with appropriate declaratory relief, prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining recipients' consent to receive calls or text messages made with such equipment;

d) An injunction, together with appropriate declaratory relief, prohibiting Defendant from continuing to send text messages to persons who have opted-out by replying "stop" or with similar commands, and who have not subsequently opted-in by responding "start."

e) $500 in statutory damages for each and every text message that Defendant or its agent negligently sent in violation of 47 U.S.C. § 227(b)(1) of the TCPA;

f) $1,500 in statutory damages for each and every text message that Defendant or its agent willfully or knowingly sent in violation of 47 U.S.C. § 227(b)(1) of the TCPA; and

g) Such further and other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs request a trial by jury.

Dated: July 5, 2019.

By: /s/ *Simon S. Grille*
Daniel C. Girard (State Bar No. 114826)
Angelica M. Ornelas (State Bar No. 285929)
Simon S. Grille (State Bar No. 294914)
GIRARD SHARP LLLP
601 California Street, Suite 1400
San Francisco, California 94108

-14-
FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 4:18-cv-02931-HSG

Telephone: (415) 981-4800
Facsimile: (415) 981-4800
Email: dgirard@girardsharp.com
Email: aornelas@ girardsharp.com
Email: sgrille@girardsharp.com

Avi R. Kaufman (*pro hac vice*)
Kaufman P.A.
400 NW 26th Street
Miami, Florida 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

Steven L. Woodrow (*pro hac vice*)
swoodrow@woodrowpeluso.com
Patrick H. Peluso (*pro hac vice*)
ppeluso@woodrowpeluso.com
Taylor Smith (*pro hac vice*)
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman (*pro hac vice*)
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, Fl 33131
Telephone: (877) 333-9427
Fax: (888) 498-8946
Email: law@stefancoleman.com

David S. Ratner, Esq.
David Ratner Law Firm, LLP
33 Julianne Court
Walnut Creek, CA 94595
Telephone: (917) 900-2868
Facsimile: (925) 891-3818
Email: david@davidratnerlawfirm.com

Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
Lozeau Drury LP
410 12th Street, Suite 250
Oakland, California 94607
Tel: 510-836-4200

-15-

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 4:18-cv-02931-HSG

Fax: 510-836-4205

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2019, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.

/s/ *Simon S. Grille*
Simon S. Grille